Paul D. JOHNSON; Kevin Wadsworth; Ted Cooper; Lauren Cooper; Ray Sebastian, Plaintiffs–Appellants,

v.

David KNOWLES; Republican Central Committee of El Dorado County; Steven Bailey; Robert Becker; Ed Borba; Bernard Carlson; Merlin Chardi; Christina Cowell; Charles Chrisman; Dan Dellinger; Tom Emigh; Michael Frenn; Maloa Gribkoff; Kevin Hanley; Tom Schumacher; John Stelzmiller; Laveta Stelzmiller; David Titus, Defendants–Appellees.

No. 96–15852.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1997.

Decided May 21, 1997.

G. Michael German, Law Offices of G. Michael German, San Francisco, California, for plaintiffs-appellants.

William J. Coyne and Michael R. O'Neil, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, California, for defendant-appellee David Knowles.

Marjorie E. Manning and T.D. Bolling, Jr., Bolling, Walter & Gawthrop, Sacramento, California, for the remaining defendants-appellees.

Before: WIGGINS, JOHN T. NOONAN, Jr., and TROTT, Circuit Judges.

## OPINION

TROTT, Circuit Judge.

### OVERVIEW

Paul Johnson and Kevin Wadsworth, a gay couple, and a putative class of El Dorado County, California Republicans who elected Johnson and Wadsworth to the County's Republican party central committee (collectively, the "Plaintiffs") appeal the district court's order dismissing their 42 U.S.C. § 1983 action for failure to state a claim.[1] They alleged in their Complaint that David Knowles—a member of the California Assembly and *ex officio* member of the El Dorado County Republican Party Central Committee (the "Committee")—and 16 other Committee members (collectively, the "Defendants") conspired to oust Johnson and Wadsworth from their elected posts on the Committee because of their sexual orientation. This conduct, the Plaintiffs contend, violated their First Amendment rights to free speech and participation in the political process and their Fourteenth Amendment right to equal protection.

---

1. The motion of the Bay Area Lawyers for Individual Freedom to file a brief as amicus curiae is denied.

The district court ruled that the Committee's conduct was not action "under color of state law" and dismissed their claim under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Since 1978, Paul Johnson and Kevin Wadsworth have lived together as exclusive life partners in a homosexual relationship.[2] For more than ten years, they have been active members of the California Republican Party, registering to vote as Republicans and serving on several Republican central committees in California.

Under the California Elections Code, members of county central committees are elected every two years at the direct primary election. Cal.Elec.Code § 7420. In both 1992 and 1994, Johnson and Wadsworth ran for and were elected to the El Dorado County Republican Central Committee. In these elections, they each received approximately 1500 votes.

Johnson and Wadsworth own and reside at the Lone Antler Ranch in El Dorado County. On August 25, 1994, they leased part of the ranch to the "Katie Hirning for Congress Campaign" for a fundraiser for Katie Hirning, the Democratic candidate in the November 1994 California Fourth Congressional District election. The "Katie Hirning for Congress Campaign" paid $100 to use the ranch. Neither Johnson nor Wadsworth participated in the fundraiser.

Defendant David Knowles is an elected Republican member of the California Assembly for the Fourth Assembly District. By virtue of his status as the Republican party nominee for the Assembly, Knowles also is an *ex officio* member of the Committee. Cal. Elec.Code § 7404(a). According to the

Plaintiffs, Knowles actively worked to remove Johnson and Wadsworth from the Committee because of his alleged prejudice against homosexuals. He allegedly vowed to "get rid of those faggots" and used his power and influence as an Assemblyman to bring about their ouster.

On September 12, 1994, the Committee held a regularly scheduled meeting and, in the absence of Johnson and Wadsworth,[3] voted 13 to 1 with 3 abstentions to remove Johnson and Wadsworth from the Committee for providing support to Democratic candidates (i.e., for renting their ranch to the Hirning campaign). Although Knowles was not present at the meeting, he allegedly instructed other committee members to vote in favor of Johnson's and Wadsworth's removal. The Committee had not provided Johnson and Wadsworth with any notice that action was to be taken against them at this meeting.

Following the ouster, Johnson resigned his Republican party membership in disgust and re-registered as a Democrat. Wadsworth, however, continued as a Republican and, in January 1995, took his seat on the Committee that he had won in the June 1994 primary.[4]

On January 9, 1995, the new Committee held its organizational meeting. Wadsworth was sworn in to his new, elected seat on the Committee. The Committee elected officers, and, over Wadsworth's objection on the ground of inadequate notice, adopted new bylaws, including a provision for disciplinary procedures that enabled the Committee to remove members whose actions were deemed "injurious to the Committee." At the end of the meeting, Defendant Tom Emigh, a Committee member, indicated that he would seek Wadsworth's removal at the next scheduled Committee meeting.

---

**2.** The facts discussed herein are taken from the allegations in the Plaintiffs' First Amended Complaint. For purposes of this appeal, we assume these facts are true. *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996).

**3.** Johnson was in Ohio attending his father's funeral. Wadsworth left the meeting early because he had undergone medical treatment earlier that day and had begun to feel ill.

**4.** Wadsworth was ousted from the seat that he won in the 1992 primary. At the time of his ouster, however, he had already been elected to the Committee in the 1994 primary. Thus, he was able to rejoin the Committee after his ouster as a newly-elected member.

On February 13, 1995, at the next Committee meeting, Defendant Emigh moved to remove Wadsworth. The Committee voted 9 to 3, with 1 abstention, to remove Wadsworth. Although Knowles was not present at the meeting and did not vote for Wadsworth's removal, he allegedly instructed, prevailed upon, or otherwise influenced other Committee members to vote for Wadsworth's removal. The Committee's stated grounds for Wadsworth's removal included Wadsworth's alleged public criticism of the Committee and his alleged support of Hirning's campaign. Knowles, however, allegedly told Defendant Tom Schumacher, a Committee member, that he encouraged Wadsworth's removal because of his homosexuality.

## STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996). A complaint should not be dismissed unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Id.* In reviewing the dismissal, we must take all allegations of material fact in the Complaint as true and construe them in the light most favorable to the Plaintiffs. *Smith,* 84 F.3d at 1217.

## DISCUSSION

■ To state a claim for relief under section 1983, the Plaintiffs must plead two essential elements: 1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and laws of the United States. *Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir.1983). Because the Plaintiffs have failed to show that the Defendants acted under color of state law and fail to point to any way that such action can be shown, we affirm the district court's order dismissing the Plaintiffs' claim with prejudice.

### I. *Assemblyman Knowles*

■ A person acts under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir.1991).

■ There is no doubt that Knowles, in his capacity as a member of the California Assembly, is a public official. But even as a public official, Knowles's alleged wrongful actions are not taken under color of state law if they are "'not in any way related to the performance of [his] duties'" as a public official. *Id.* (quoting *Murphy v. Chicago Transit Auth.,* 638 F.Supp. 464, 467 (N.D.Ill. 1986)). Thus, we must determine whether Knowles's actions related to the duties and powers of his position as an Assemblyman or instead related to his role as a member of the Republican party.

Knowles's *ex officio* membership on the Committee derives from his position as the Republican nominee for the Assembly, not from his status as a California Assemblyman. Cal.Elec.Code § 7404. As an *ex officio* Committee member, Knowles has the same rights and powers as the other Committee members, with one immaterial exception: As an incumbent office holder, Knowles can appoint an alternate Committee member to vote in his stead without the Committee's authorization. Cal.Elec.Code § 7406. Thus, Knowles's status as an Assemblyman gives him no direct power over the Committee and its actions; he has no greater power on the Committee as an Assemblyman than any other Committee member has as an elected member.

The Plaintiffs argue that Knowles's Assemblyman status enabled him to exercise greater influence over the Committee. But the mere fact that the prestige of Knowles's office may have enhanced his influence over the Committee is not enough to convert his actions into state action. "[A]ll actions of a

government official are not, simply by virtue of the official's governmental employ, accomplished under the color of federal law." *Laxalt v. McClatchy,* 622 F.Supp. 737, 746 (D.Nev.1985) (holding that a United States Senator did not act under color of law when he wrote a letter on Senate stationery demanding retraction of a newspaper article).

In sum, Knowles acted against Johnson and Wadsworth only in his capacity as a member of the Committee and a nominee of the Republican party, not in his official capacity as a state Assemblyman. Thus, as the district court concluded, Knowles's actions should be evaluated on the same terms as the other Committee members for purposes of determining whether, under the alleged circumstances, he acted under color of state law.

## II. *The Committee Members*

■ Under the law of this circuit, county central committees of political parties are private actors, not public agencies, even though they are regulated by the state. *See San Francisco County Democratic Cent. Comm. v. Eu,* 826 F.2d 814 (9th Cir.1987) (rejecting argument that county central committees of the Republican and Democratic parties are public entities that do not enjoy First Amendment protection), *aff'd,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). The Plaintiffs argue, however, that even if the Committee is itself a private actor, the State of California's significant involvement in the regulation of the Committee and its election and removal processes converted the Committee's action against Johnson and Wadsworth into action under color of state law.

"Action taken by private individuals may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton,* 708 F.2d at 382. Although section 1983's under-color-of-state-law requirement is technically separate from the Fourteenth Amendment's state-action requirement, the two inquiries are closely related. *Collins v. Womancare,* 878 F.2d 1145, 1148 (9th Cir. 1989). Because the Plaintiffs are required to establish state action for purposes of their constitutional claims, we treat the under-col-

or-of-state-law requirement and the state-action requirement as equivalent. *Id.*

The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Id.* at 1148–49; *see also George v. Pacific-CSC Work Furlough,* 91 F.3d 1227, 1231 (9th Cir.1996).

### A. *The Public Function Test*

The Supreme Court has found state action present "in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). One such power that the Supreme Court has recognized as traditionally exclusively sovereign is the power to conduct elections for public officials. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 157–58, 98 S.Ct. 1729, 1733–34, 56 L.Ed.2d 185 (1978).

The Plaintiffs argue that they were elected to their Committee offices via the primary election ballot and that the Defendants' actions in ousting them nullified the election result. Because the Defendants' conduct interfered with an election, the Plaintiffs argue that the Defendants exercised a public function.

■ As the district court concluded, the Plaintiffs' argument stretches the public function test too far. The Supreme Court has explicitly noted that the scope of the public function doctrine is carefully and narrowly defined. *Flagg Brothers,* 436 U.S. at 158, 98 S.Ct. at 1734. "The doctrine does not reach to all forms of private political activity, but encompasses only state-regulated elections or elections conducted by organizations which in practice produce 'the uncontested choice of *public* officials.'" *Id.* (emphasis added). Cases in which the Supreme Court has applied the public function doctrine all have involved challenges to the electoral process for electing public officials. *See Terry v. Adams,* 345 U.S. 461, 469, 73 S.Ct. 809, 813, 97 L.Ed. 1152 (1953) (holding that Dem-

ocratic party's rules for the primary constituted state action where the primary "ha[d] become an integral part, indeed the only effective part, of the elective process that determines who shall rule and govern in the country"); *Smith v. Allwright*, 321 U.S. 649, 664, 64 S.Ct. 757, 764–65, 88 L.Ed. 987 (1944) (holding that a party primary involves state action where the state "requires a certain electoral procedure, prescribes a general election ballot made up of party nominees and limits the choices of the electorate in general elections for state offices, practically speaking, to those whose names appear on such a ballot").

The Defendants' actions do not satisfy the public function test for two reasons. First, the Plaintiffs do not allege that the Defendants violated their constitutional rights by conducting an election in an unconstitutional manner. Rather, they challenge only the Defendants' actions in removing Johnson and Wadsworth from their positions on the Committee. Second, the Plaintiffs do not allege that the Defendants interfered with an election for *public* office. Although the Plaintiffs were elected to their positions on the Committee through the primary election ballot, they were not elected to public offices, but only to private positions within the Republican party. *See Moore v. Panish*, 32 Cal.3d 535, 545, 186 Cal.Rptr. 475, 652 P.2d 32 (Cal.1982) (membership in a political party's county central committee is not a public office, but in reality is an office of a political party).

The Plaintiffs suggest that "the public office/private post distinction should not control here," but they offer no reasoned basis for ignoring such an important distinction. The management and internal rules of a private political party are not powers "traditionally exclusively reserved to the state." *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454. In fact, the Supreme Court has held that, absent a compelling state interest, political parties are entitled to organize themselves, conduct their affairs, and select their leaders in the manner they think best, without any interference from the State. *Eu*, 489 U.S. at 230, 109 S.Ct. at 1023. Thus, the Defen-

dants' actions do not constitute state action under the public function test.

### B. *The Joint Action Test*

■ The joint action test for state action is met where private persons are "willful participant[s] in joint activity with the State or its agents" that effects a constitutional deprivation. *Howerton*, 708 F.2d at 383. An agreement between government and a private party can create state action. *George*, 91 F.3d at 1231. The Plaintiffs argue that the Committee members conspired with Assemblyman Knowles, a state agent, and thereby acted under color of state law in depriving them of their First and Fourteenth Amendment rights.

Because Knowles acted against Johnson and Wadsworth in his capacity as a member of the Republican party, not in his capacity as an Assemblyman, the Committee's conduct cannot satisfy the joint action test. The Plaintiffs have not alleged any conspiracy between the Committee members and a government actor.

### C. *The State Compulsion Test*

■ State action may be found under the state compulsion test where the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). The Plaintiffs argue that, by relying on section 7413 of the California Elections Code, which states that "[a] committee may remove any member … who gives support … for a candidate for another party," the Plaintiffs received "covert, if not outright encouragement from the state for their actions."

Section 7413 in no way compelled or encouraged the Committee to remove Johnson and Wadsworth on the basis of their sexual orientation. It merely authorized the Committee to remove members if they supported other-party candidates, a lawful and legitimate basis for removal. This authorization to remove Committee members for legitimate reasons cannot convert the Committee's

alleged discriminatory removal into state action.

In *Jackson*, the Supreme Court rejected a similar argument that state regulations authorizing utilities to terminate service for non-payment converted the utilities' actions into state action. The Court stated: "[The utilities'] exercise of the choice allowed by state law where the initiative comes from it and not from the State does not make its action in so doing 'state action' for purposes of the Fourteenth Amendment." 419 U.S. at 357, 95 S.Ct. at 457.

The Plaintiffs' reliance on *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), is misplaced. In *Adickes*, a department store refused to serve a Caucasian teacher at its lunch counter because she was accompanied by her black students. *Id.* at 147, 90 S.Ct. at 1602. The Supreme Court held that she could state a claim against the department store under section 1983 if she could prove that the department store refused her service because of a state-enforced custom of racial segregation. *Id.* at 170, 90 S.Ct. at 1614. Despite their assertion that *Adickes* is "similar to this appeal," the Plaintiffs point to no state-enforced custom of removing Committee members on the basis of homosexuality. *Adickes* simply bears no similarity to the present case.

In short, the Plaintiffs cannot point to any state regulation or custom having the force of law that compelled, coerced, or encouraged the Defendants to discriminate against the Plaintiffs. Any initiative in removing the Plaintiffs on this basis came from the Committee members, not from the State. Thus, the Defendants' actions do not satisfy the state compulsion test.

### D.  *The Nexus Test*

■ Finally, under the nexus test, we must consider whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351, 95 S.Ct. at 454. The only relationship between the state and the Committee alleged by the Plaintiffs is that the state regulates the Committee through the California Elections Code.

"The mere fact that a [private actor] is subject to state regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment." *Id.* at 350, 95 S.Ct. at 454. The Plaintiffs allege no facts that demonstrate that "the state ha[s] so far insinuated itself into a position of interdependence" with the Committee that it was a joint participant in the Committee's discrimination. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961) (holding that restaurant's refusal to serve African Americans was state action where restaurant leased space in building owned by the state). Thus, the Plaintiffs have not shown state action under the nexus test.

### CONCLUSION

■ The El Dorado County Republican Central Committee is a private political organization, not a government actor. Although the Committee conceivably could act under color of state law for some purposes, there is nothing tying the State of California to the particular decision that the Plaintiffs challenge, namely, the Committee's decision to oust Johnson and Wadsworth from the Committee on the basis of their sexual orientation. Every court that has considered similar section 1983 claims has reached this conclusion. *See, e.g., Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192 (6th Cir.1990) (Republican party did not act under color of state law in precluding members from voting for ward chairmen because of their right-to-life views); *Blank v. Heineman*, 771 F.Supp. 1013 (D.Neb.1991) (elected officers of Republican Party did not act under color of state law in removing officers because of their evangelical Christian beliefs).

The Plaintiffs have not alleged facts showing that the Defendants acted under color of state law. Thus, we affirm the district court's order dismissing the Plaintiffs' section 1983 claim. Because we affirm on this ground, we do not reach the Defendants' alternative argument that the Plaintiffs also

failed to allege violations of their First and Fourteenth Amendment rights.

**AFFIRMED.**