Nancy LOUIE, on behalf of herself and others similarly situated, Plaintiffs,

v.

MCCORMICK & SCHMICK RESTAURANT CORP., and Does 1 through 50, inclusive, Defendants.

No. CV 06 3752 MMM(SSX).

United States District Court, C.D. California.

Oct. 18, 2006.

Darren M. Cohen, Eric B. Kingsley, George R. Kingsley, Kingsley and Kingsley, Encino, CA, for Plaintiff.

Candice Terry Zee, Michael L. Gallion, Thomas R. Kaufman, Seyfarth Shaw, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

MORROW, District Judge.

On March 15, 2006, plaintiff Nancy Louie filed a complaint in Los Angeles Superior Court against her former employer, McCormick & Schmick. Louie sued on her own behalf and on behalf of all individuals similarly situated. McCormick & Schmick removed the action to this court on June 15, 2006, invoking jurisdiction under the Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 4(a), 119 Stat. 9 (codified in relevant part at 28 U.S.C. 1332(d)(2)).

On July 3, 2006, plaintiff filed a first amended complaint asserting three causes of action. The first claim alleges that defendant's tip-sharing arrangement, in which Louie was required to participate as a former employee, violates California Labor Code § 351 because it mandates that servers share tips with bartenders who do not provide direct table service to patrons. The second and third claims assert violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 et seq., and the Labor Code Private Attorney General Act, California Labor Code §§ 2698 et seq.

Both claims are based on McCormick & Schmick's purported violation of Labor Code § 351. McCormick & Schmick filed a motion to dismiss Louie's complaint on June 16, 2006. Although the amended complaint was filed after the motion to dismiss, the parties by stipulation asked that the motion be deemed directed to the amended complaint. The court agreed to this procedure on July 14, 2006.

## I. FACTUAL BACKGROUND

Louie previously worked for McCormick & Schmick, a restaurant chain with multiple locations in California, as a server.[1] In this capacity, she was allegedly required to pay "bartenders a percentage of [her] tips" even when they "did not offer direct table service to her customers."[2] Louie asserts that under Labor Code § 351, only employees "who provide direct table service to customers" may participate in a tip-sharing arrangement, and that bartenders, who provide "nominal or no direct table service" to a server's customers, are not eligible to receive a percentage of the tips.[3]

## II. DISCUSSION

### A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can·prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also, e.g., *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir.1997). Thus, a Rule 12(b)(6) dismissal is proper only where plaintiff "lack[s] ... a cognizable legal theory" or fails to allege "sufficient facts [to support] ... a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

Generally, a court considers only the allegations of the complaint and attached exhibits in deciding a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). Documents that are proper subjects of judicial notice can be considered, however, without converting the motion into one for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).[4] The

---

1. First Amended Complaint, ¶ 6–8.

2. *Id.*, ¶ 12

3. *Id.*, ¶ 25–29.

4. Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts, the legislative history of state statutes, and the records of state administrative agencies. See, e.g., *Alpha III, Inc. v. City of San Diego*, 187 Fed. Appx. 709, 710, 2006 WL 1876853, *1 (9th Cir.2006) (Unpub.Disp.) ("We take judicial notice of the state court's written opinions and final judgment..."); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 8 (9th Cir.2005) (granting plaintiff's request to take judicial notice of the legislative history of a state statute); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001) (explaining that a court may judicially notice undisputed matters of public record but not disputed facts stated

therein); *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1064 n. 7 (9th Cir.1998) (holding that state health department records were proper subjects of judicial notice); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir.1997) (noting that a court "may properly take judicial notice of the papers filed" in both federal and state court proceedings); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. The proceedings before the California Superior Court are 'directly related' to this appeal and may in fact be dispositive. Accordingly, we take notice of that court's final judgment ...," citations and internal quotation marks omitted); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986) (observing that the

**1156**

court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

### B. Whether Defendant's Mandatory Tip–Pooling Arrangement Violates California Labor Code § 351 [5]

 Louie alleges that, during the period she worked at McCormick & Schmick, the restaurant mandated that she share a

court may take judicial notice of the records and reports of state administrative bodies), overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

Therefore, the court grants Louie's request that it take judicial notice of certain portions of the legislative history of Labor Code § 351, as well as various opinion letters issued by federal and state regulatory agencies regarding the legality of mandatory tip-pooling arrangements. In addition, the court grants defendant's request for judicial notice of the Los Angeles Superior Court's Order Granting Defendant's Motion for Judgment on the Pleadings in *Farmer et al. v. American Restaurant Group, Inc. et al.,* No. BC 349068 (filed Sept. 19, 2006), as well as the caption pages of sixteen complaints filed by Louie's attorney in Superior Court. Each complaint alleges that mandatory tip-pooling arrangements violate California law.

**5.** Louie's first cause of action alleges that, "[p]ursuant to the provisions of Labor Code § 351, [she is] entitled to recover the tips that were paid out in an amount [to] be proven." (First Amended Complaint, ¶ 29.) It is doubtful that Louie can recover under Labor Code § 351. See *Matoff v. Brinker Restaurant Corp.,* 439 F.Supp.2d 1035, 1037 (C.D.Cal.

portion of the tips left by the patrons she served with non-managerial employees who did not directly service those patrons at their tables. She contends this violates Labor Code § 351, which provides, in relevant part:

"No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for." CAL. LABOR CODE § 351

Two California appellate courts [6] have held

2006) (holding that there is no private right of action under § 351 and dismissing a claim brought directly under that statute). McCormick & Schmick did not seek dismissal of Louie's § 351 claim on this basis, and, given the court's disposition of this motion, it declines to address the issue *sua sponte.* Whether or not there is a private right of action under § 351, an employee may seek relief for violations of the statute under the UCL, Business & Professions Code §§ 17200 et seq., see *Matoff,* 439 F.Supp.2d at 1037–38, or the Labor Code Private Attorney General Act, Labor Code §§ 2698 et seq., and Louie has pled both types of claims in this action. (First Amended Complaint, ¶¶ 30–44.)

**6.** " 'In a diversity case, where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it.' " *Westlands Water Dist. v. Amoco Chemical Co.,* 953 F.2d 1109, 1111 (9th Cir.1991) (quoting *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.,* 880 F.2d 176, 186 (9th Cir.1989)) (alterations original, internal quotation marks omitted). The California Supreme Court has not addressed the issue raised by defendant's motion to dismiss, and the court must therefore predict how it would rule. "When an intermediate appellate court has ruled on an issue, [however,] and

that the statute does not prohibit mandatory tip-pooling arrangements. See *Leighton v. Old Heidelberg, Ltd.*, 219 Cal.App.3d 1062, 268 Cal.Rptr. 647 (1990); see also *Jameson v. Five Feet Restaurant, Inc.*, 107 Cal.App.4th 138, 131 Cal.Rptr.2d 771 (2003). The court in *Leighton* analyzed the statutory language, and concluded:

> "While the language of the statute expressly prohibits various employer practices, there is no mention therein of employer-mandated tip pooling, or of any kind of tip pooling among employees. Tip pooling has been around for a long time, as has section 351, and had the Legislature intended to prohibit or regulate such practice, it could have easily done so, just as it prohibited the various enumerated employer practices. Further, we find nothing in the legislative history of section 351 or related sections, which precludes such an arrangement." *Leighton*, 219 Cal.App.3d at 1067, 268 Cal.Rptr. 647.

the state supreme court has not yet ruled on it, [a federal court sitting in diversity should] follow the intermediate court's decision 'unless there is convincing evidence that the state supreme court would decide differently.'" *Id.* (quoting *State Farm Fire & Casualty Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir.1989)). Neither party has presented "convincing evidence" that the California Supreme Court's analysis of the validity of tip-sharing arrangements under Labor Code § 351 would differ from the analysis of the California appellate courts, and the court believes that the Supreme Court would not construe the statute differently. This is especially true here because, as explained *infra*, when the California legislature recently amended § 351, see 2000 Cal. Legis. Serv. ch. 876 (A.B.2509) (West), it failed to address the legality of tip pooling. "'[W]hen ... the Legislature undertakes to amend a statute which has been the subject of judicial construction' 'it is presumed that the Legislature was fully cognizant of such construction,'" and, by electing not to alter the construction, implicitly approved it. See *People v. Garcia*, 39 Cal.4th 1070, 1087–88, 48 Cal.Rptr.3d 75, 141 P.3d 197 (2006) (quoting

Similarly, the court in *Jameson* stated that "[t]ip pooling is permissible under California law if an employer or agent does not take any part of a gratuity given to an employee by a patron or otherwise violate section 351." *Jameson*, 107 Cal.App.4th at 141, 131 Cal.Rptr.2d 771; see also *id.* at 143, 131 Cal.Rptr.2d 771 ("Tip pooling is permissible as long as it does not run afoul of the prohibitions contained in section 351"); *id.* at 145, 131 Cal.Rptr.2d 771 ("Under section 351, tip pooling is only permitted among employees who are neither employers nor agents under section 350").

■ These cases are consistent with the court's own interpretation of the statute. Section 351 prohibits an employer or its agent from taking any portion of a tip left by a patron for an employee, from deducting the amount of the tip from wages paid to the employee, and from requiring that the employee credit all or part of the tip to wages due from the employer.[7] It does not prohibit tip shar-

*Palos Verdes Faculty Ass'n v. Palos Verdes Peninsula Unified Sch. Dist.*, 21 Cal.3d 650, 659, 147 Cal.Rptr. 359, 580 P.2d 1155 (1978)). Thus, even if the California Supreme Court might, as a matter of first impression, have construed Labor Code § 351 differently than the *Leighton* court, the court concludes that it would nonetheless affirm *Leighton's* holding, given the intervening decision of the state legislature not to address the legality of tip pooling in amending § 351.

7. As noted in *Jameson*, Labor Code § 350 defines employer as "'every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other basis.'" *Jameson*, 107 Cal.App.4th at 143, 131 Cal.Rptr.2d 771 (quoting CAL. LABOR CODE § 350). An agent is a "'person other than the employer having the authority to hire or discharge any employee or supervise, direct, or control the acts of employees.'" *Id.*

ing among employees who are neither employers nor agents. See *id.* at 145, 131 Cal.Rptr.2d 771. Thus, the fact that an employer requires a server to pool tips with other service employees who do not hire, fire, supervise or control their co-workers does not constitute a "taking" as that term is used in § 351. See *Leighton,* 219 Cal.App.3d at 1068, 268 Cal.Rptr. 647 (stating that an employer that mandated tip pooling did "not 'take, collect, or receive' as its own any part of a gratuity left by a patron," and "reject[ing] plaintiff's contention that employer-mandated tip

pooling constitute[d] a prohibited 'taking' by the employer within the meaning of section 351" because "[s]uch a construction [was] a strained one, outside of the ambit of the definition of the word 'take' contemplated by the Legislature in drafting the statute").[8]

Citing *Leighton,* Louie urges that the court adopt a narrower construction of § 351—i.e., that to be legal, tip-pooling arrangements must be limited to employees who directly serve patrons at their tables.[9] So construed, Louie asserts,

---

**8.** Louie argues that the last sentence of the statute, which states that tips are the "sole property of the employee or employees" for whom they are left, demonstrates that mandatory tip sharing with bartenders is prohibited. The court does not find this logic persuasive. Statutory language must be interpreted in light of the statute as a whole. See, e.g., *Curle v. Superior Court,* 24 Cal.4th 1057, 1063, 103 Cal.Rptr.2d 751, 16 P.3d 166 (2001) (stating that courts must construe "portions of a statute in the context of the entire statute and the statutory scheme of which it is a part"); *Ailanto Properties, Inc. v. City of Half Moon Bay,* 142 Cal.App.4th 572, 582, 48 Cal.Rptr.3d 340 (2006) ("We do not examine th[e statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment"). In the context of § 351, it is apparent that the reference to tips being the "sole property" of the employees means that the tips are the employees', rather than the employer's, property. See *Leighton,* 219 Cal. App.3d at 1068–69, 268 Cal.Rptr. 647 (stating that "the legislative intent reflected in the history of the statute, was to ensure that employees, not employers, receive the full benefit of gratuities that patrons intend for the sole benefit of those employees who serve them," that, "[c]onsistent with this, the Legislature declared a gratuity to be the 'sole property' of the 'employee or employees' for whom it was left by the tipping patron," and that a server's argument that tip pooling constituted a taking was "unsound because it is based on the erroneous assumption that the entire tip left by the patron is the waitress's personal property"); see *id.* at 1069, 268 Cal.Rptr. 647 ("[T]he average diner has little or no idea and

does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it. This, and the near impossibility of being able to determine the intent of departed diners in leaving a tip, in our view, account for the Legislature's use of the term 'employees' in declaring that '[e]very such gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for' ").

The legislative history of the statute cited by Louie underscores the fact that the legislature intended to ensure that employers did not take tips intended for employees, and that it was not focused on tip sharing among service workers. See Senate Committee on Industrial Relations, Analysis of SB 10, June 7, 1973 ("Current law provides that the employer may take all of the gratuities or may share in the gratuity provided that he posts a notice in a conspicuous place indicating that such be the case.... The proposed legislation would spell out that gratuities are the sole property of the employee and the employer would be prohibited from taking any part of them or crediting any part of them against wages that might be due"); Senate Committee on Industrial Relations, Analysis of SB 10, August 30, 1973 ("The bill in its present form deletes the authority of an employer from receiving any of the tips left by the patron, and spells out that such tips are the sole property of the employee or employees for whom they are left").

**9.** Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") at 5–8.

§ 351 outlaws mandatory tip sharing between servers and bartenders, irrespective of whether tipping customers order alcoholic beverages from the bar.[10] *Leighton* does contain some language that might be read to support the stringent table service/non-table service distinction that Louie advocates. See, e.g., *id.* at 1067, 268 Cal.Rptr. 647 (describing tip sharing as a standard industry practice in which the "restaurant employer . . . pools and distributes [a tip] among those employees who *directly provide table service* to a [tipping] patron," emphasis added); *id.* at 1069, 268 Cal.Rptr. 647 ("[The average diner] rewards for good service no matter which one of the employees *directly servicing the table* renders it," emphasis added). The court, however, cannot afford these passages the significance that Louie suggests they should have.

The California Supreme Court has consistently instructed that " 'the language of an opinion must be construed with reference to the facts presented by the case, and [that] the positive authority of a decision is coextensive only with such facts.' " *Brown v. Kelly Broadcasting Co.*, 48 Cal.3d 711, 734–735, 257 Cal.Rptr. 708, 771 P.2d 406 (1989) (quoting *River Farms Co. v. Superior Court*, 131 Cal.App. 365, 369, 21 P.2d 643 (1933)); see also *Colmenares v. Braemar Country Club, Inc.*, 29 Cal.4th 1019, 1029, 130 Cal.Rptr.2d 662, 63 P.3d 220 (2003) (" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court . . . ,' " quoting *People v. Scheid*, 16 Cal.4th 1, 17, 65 Cal.Rptr.2d 348, 939 P.2d 748 (1997)); *Vons Companies, Inc. v.*

*United States Fire Ins. Co.*, 78 Cal. App.4th 52, 60, 92 Cal.Rptr.2d 597 (2000) ("[I]t is important to remember that the language of an opinion must be construed in light of the facts of the particular case. . .").

The tip-pooling arrangement the *Leighton* court sanctioned under § 351 expressly provided that bartenders would receive five percent of all servers' tips. See *id.* at 1068 n. 2, 268 Cal.Rptr. 647 (noting that the challenged tip-pooling arrangement required "payment of 15 percent of a gratuity to the busboy and 5 percent to the bartender"); see also *id.* at 1075–76, 268 Cal.Rptr. 647 (Johnson, J., dissenting) (noting that plaintiff was fired for refusing to share her tips with both busboys *and bartenders*, who were entitled to tip sharing "even where customers did not order any drinks from the bar"). In addition, in support of her opposition to defendant's motion for summary judgment, Leighton submitted a declaration in which she stated that she shared tips with bartenders "to keep her job," although she felt that "the tips were hers to do with as she pleased." *Id.* at 1066, 268 Cal.Rptr. 647. Her complaint, moreover, expressly sought "repayment of all monies paid by her to busboys *and bartenders* under [the] employer-mandated tip pooling arrangement." *Id.* at 1065, 268 Cal.Rptr. 647 (emphasis added). As a result, *Leighton's* holding that Labor Code § 351 does not prohibit tip-pooling arrangements must be construed with reference to the fact that the arrangement there at issue mandated that bartenders receive five percent of all tips left by patrons, and accordingly must be read as sanctioning such an arrangement.[11]

---

**10.** See, e.g., *id.* at 6 ("Bartenders who are not seen and do not interact with the customers do not provide a direct customer service"); *id.* at 7 ("[B]artenders do *not* contribute to the service of the patron. They do not come into direct contact with the patrons of the restaurant. Patrons do not tip the kitchen staff for a well cooked meal, and likewise,

they do not intend to tip the bartenders when their [drinks] . . . are served by the[ ] waiter").

**11.** *Matoff* is not to the contrary. As noted earlier, the court in that case concluded that plaintiff could not state a Labor Code § 351 claim because there was no private right of action under the statute. See *Matoff*, 439

There is an additional reason why the court cannot accept Louie's table service/non-table service distinction. The language in *Leighton* on which Louie relies is incompatible with the rationale underlying the court's opinion. The *Leighton* court recognized the inherent difficulty of determining how gratuities left by a restaurant's patrons should be distributed among its various service employees. See, e.g., *id.* at 1069, 268 Cal.Rptr. 647 (noting "the near impossibility of being able to determine the intent of departed diners in leaving a tip"); *id.* at 1070, 268 Cal.Rptr. 647 (noting that, were the first employee who arrives at a departed patron's table entitled to pocket any gratuity left, "one employee would be depriving the other of the use of his or her own personal property"). By highlighting in its opinion the service provided by busboys, the court illustrated the inequity of a system that deems all gratuities left by tipping patrons to be the exclusive property of the servers who wait on the tipping patrons' tables. See *id.* at 1070 n. 5, 268 Cal.Rptr. 647 ("[F]air[ness] ... require[s] a waitress to share the tip with the busboy who buses her table, for were it not for the busboy, the work ordinarily performed by him would fall upon the waitress who, in addition to her own work, would have the responsibility of his duties"). Recognizing the need to ensure that all service employees share equitably in gratuities left by tipping patrons, the court concluded that restaurant owners must have discretion to determine how a tip-sharing arrangement should operate:

> "An employer must be able to exercise control over his business to ensure an equitable sharing of gratuities in order to promote peace and harmony among employees and provide good service to the public. To deprive a restauranteur of the ability to regulate and control the conduct of his own business, leaves the door open to anarchy in the restaurant industry. It is for this very reason that employer mandated tip pooling among employees has been a long-standing practice establishing a policy in the industry which permits the employer to operate a well run, well ordered restaurant business." *Id.* at 1071, 268 Cal. Rptr. 647.

In making this observation, the court did not impose any restrictions on the tip-pooling arrangements that restaurant owners could devise, other than the § 351–mandated requirement that only *service employees* receive gratuities "to the exclu-

---

F.Supp.2d at 1037. The court declined to dismiss plaintiff's Business & Professions Code § 17200 claim, however, noting that a violation of § 351 could constitute an "unlawful" act actionable under the UCL. *Id.* at 1037–38. In this regard, the court stated: "While mandatory tip pooling has been found not to violate section 351 when the participants in the pool directly serve customers, see *Leighton v. Old Heidelberg, Ltd.*, 219 Cal.App.3d 1062, 268 Cal.Rptr. 647 (1990), Plaintiff has alleged that servers in Defendant's restaurants were required to share tips with bartenders who did not provide such direct service. Because the tip pool is mandatory, if it is unlawful, it may constitute an employer's unlawful taking of employee's tips within the meaning of section 351. Although section 351 does not create a private right of action, the California Supreme Court has expressly rejected the notion that 'a private plaintiff lacks UCL standing whenever the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.'" *Id.* at 1038, 268 Cal.Rptr. 647.

As the language of the opinion makes clear, the court did not address whether the mandatory sharing of tips with bartenders was unlawful. See *id.* ("*if* it is unlawful," the tip pool "*may* constitute an ... unlawful taking"). Rather, it focused on the fact that the absence of a private right of action under § 351 did not preclude a plaintiff from asserting that a violation of the statute gave rise to a claim under the UCL.

sion of the employer." *Id.* at 1070, 268 Cal.Rptr. 647; see also *Jameson,* 107 Cal. App.4th at 145, 131 Cal.Rptr.2d 771 ("Under section 351, tip pooling is only permitted among employees who are neither employers nor agents under section 350").

As a result, the court disagrees with Louie's interpretation of *Leighton,* and concludes that the decision expressly sanctions the type of tip-sharing arrangement at issue here. However, even were *Leighton's* holding more limited—such that it only sanctioned tip sharing among employees who physically provide direct table service to restaurant patrons—the court would still grant defendant's motion to dismiss because it concludes that the California Supreme Court would hold that the type of tip-sharing arrangement at issue here is legal under § 351.[12]

■ Under California law, "[l]ongstanding, consistent administrative ·construction of a statute by those charged with its administration, particularly where interested parties have acquiesced in the interpretation, is entitled to great weight and should not be disturbed unless clearly erroneous." *Rizzo v. Bd. of Trustees,* 27 Cal.App.4th 853, 861, 32 Cal.Rptr.2d 892 (1994); see also *Yamaha Corp. of America v. State Bd. of Equalization,* 19 Cal.4th 1, 21, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (1998) (Mosk, J., concurring) (noting that "[t]his principle has been affirmed on numerous occasions by this court and the Courts of Appeal" and collecting cases). This principle applies not only to formally promulgated regulations under the state Administrative Procedure Act, CAL. GOV'T CODE §§ 11340–11529, but also to informal guidance contained in "staff attorney opinions

and other expressions short of formal, quasi-legislative regulations." *Yamaha Corp. of America,* 19 Cal.4th at 21, 78 Cal. Rptr.2d 1, 960 P.2d 1031; see also *Tidewater Marine, Inc. v. Bradshaw,* 14 Cal.4th 557, 576, 59 Cal.Rptr.2d 186, 927 P.2d 296 (1996) ("If an issue is important, then presumably it will come before the agency either in an adjudication or in a request for advice. By publicizing a summary of its decisions and advice letters, the agency can provide some guidance to the public, as well as agency staff...").

As Justice Mosk observed in his concurring opinion in *Yamaha Corp.,* "two reasons have been advanced for this principle" of deference to longstanding administrative construction of statutes:

"First, 'When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation' [quoting *Whitcomb Hotel, Inc. v. Cal. Employment Comm'n,* 24 Cal.2d 753, 757, 151 P.2d 233 (1944)]. Second ... 'a presumption that the Legislature is aware of an administrative construction of a statute should be applied if the agency's interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it' [quoting *Moore v. Cal. State Bd. of Accountancy,* 2 Cal.4th 999, 1017–18, 9 Cal.Rptr.2d 358, 831 P.2d 798 (1992)]. As the Court of Appeal has further articulated: '[L]awmakers are presumed to be aware of longstanding administrative practice and,

---

**12.** Even if *Leighton* holds only that § 351 permits tip sharing among restaurant employees who provide direct table service to patrons, it does not, by implication, prohibit the type of tip-sharing arrangement at issue here. As a result, even if plaintiff's reading of *Leigh-*

*ton* were correct, the court would still be required to predict how the California Supreme Court would resolve the legality of tip sharing between servers and bartenders under § 351. See *supra,* note 6.

thus, the reenactment of a provision, or the failure to substantially modify a provision, is a strong indication the administrative practice was consistent with underlying legislative intent'" [quoting *Rizzo v. Board of Trustees*, 27 Cal. App.4th 853, 862, 32 Cal.Rptr.2d 892 (1994)]. *Yamaha Corp. of America*, 19 Cal.4th at 21–22, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (Mosk, J., concurring) (citations and internal quotation marks omitted).

See also *id.* at 22, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (noting "the reality that the administrative agency—by virtue of the necessity of performing its administrative functions—creates a body of de facto law in the interstices of statutory law, which is relied on by the business community and the general public to order their affairs and, after a sufficient passage of time, is presumptively accepted by the Legislature").

Here, both parties cite advisories issued by the California Division of Labor Standards Enforcement ("DLSE").[13] DLSE is the state agency that adjudicates wage claims, investigates discrimination and public-work complaints, and enforces the Labor Code and Industrial Welfare Commission orders. See CAL. LABOR CODE §§ 82–83. These DLSE advisories sanction tip-pooling arrangements in which bartenders and other "front room" employees in the customer's "chain of service" receive an equitable portion of customer gratuities *"based on the number of hours ... worked"* rather than on some estimation of the "direct table service" they provide to tipping patrons. DLSE OPINION LETTER 2005.09.08 (emphasis added). The 2005 opinion letter, for example, states that non-managerial restaurant em-

ployees may participate in tip pools so long as they "contribute in the chain of service bargained for by the patron, pursuant to industry custom." The letter specifies that, in the restaurant industry, "waitpersons, buspersons, *bartenders*, hostesses, wine stewards and 'front room' chefs" are among those who may participate in tip pooling. See *id.* (emphasis added). The 1998 opinion letter is even clearer. There, the DLSE recognized that

> "the purpose of tip pooling is to ensure a fair distribution of gratuities among those employees who provide direct table service to customers.... The prevailing industry practice distributes the overwhelming majority of all pooled gratuities to waiters and waitresses, followed by a smaller percentage to busboys, and still a smaller percentage to other categories of employees who provide limited direct table service (i.e., bartenders, hostesses, and maitre d's). *This practice reflects, in an admittedly inexact way, the extent to which these categories of employees contribute in providing direct table service to a restaurant's customers.* It is this rough correlation that makes tip pooling a fair and equitable system, and that satisfies the requirement, set out in Labor Code § 351, that every gratuity is 'the sole property of the employee or employees to whom it was paid, given, or left for.'"

See DLSE OPINION LETTER 1998.12.28–1 (emphasis added).

See also *id.* (recognizing that "an employer must have the necessary discretion and latitude to implement a tip pooling distribution that is appropriate to circumstances that may be unique to a particular restaurant," and opining that § 351 only prohib-

---

**13.** Defendant references Chapter 19 of the DLSE *Enforcement Policies and Procedures Manual* (rev. ed.2002), available at http://www.dir.ca.gov/dlse/Manual-Instructions.

htm, which in turn discusses the two DLSE opinion letters attached as Exhibits 4 and 5 to Louie's request for judicial notice.

its tip-sharing arrangements that are "patently unfair or unreasonable").

Given these opinions, the court concludes that, even if *Leighton* validated tip sharing only among restaurant employees who physically service patrons' tables, the California Supreme Court would defer to DLSE's reasonable administrative interpretations of § 351. See, e.g., *Yamaha Corp. of America*, 19 Cal.4th at 21, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (Mosk, J., concurring) (noting that courts should defer "to administrative practices embodied in staff attorney opinions and other expressions short of formal, quasi-legislative regulations"). This conclusion is reinforced by the fact that the California legislature amended § 351 in 2000, adding a provision that requires restaurant employers who "permit[ ] patrons to pay gratuities by credit card" to "pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company." 2000 Cal. Legis. Serv. ch. 876 (A.B.2509) (West) (codified at CAL. LABOR CODE § 351). As part of this statutory revision, the legislature made a number of non-substantive, syntactic changes to the portion of § 351 at issue here. See *id.* It did not, however, amend the statute to prohibit the sharing of tips with bartenders and other employees who do not physically provide direct table service. Because "lawmakers are presumed to be aware of long-standing administrative practice ..., the reenactment of a provision, or the failure to substantially modify a provision, is a strong indication the administrative practice was consistent with underlying legislative intent." *Rizzo,* 27

Cal.App.4th at 862, 32 Cal.Rptr.2d 892 (1994). Applying this principle here, the California legislature's failure to prohibit tip sharing with bartenders and other indirect service employees indicates that it endorses the DLSE's interpretation of § 351, and that the California Supreme Court would therefore do likewise. Cf. *Leighton,* 219 Cal.App.3d at 1067, 268 Cal. Rptr. 647 ("Tip pooling has been around a long time, as has section 351, and had the Legislature intended to prohibit or regulate such practice, it could have easily done so, just as it prohibited the various ... employer practices [enumerated in the statute]").

Additionally, given the widespread nature of the tip-sharing practice that Louie challenges, the court concludes that the California Supreme Court would decline to impose the substantial liability[14] on private industry that Louie's suggested interpretation of § 351 would entail. A California appellate court recently expressed such a concern in declining to adopt a novel interpretation of Labor Code § 221 that would have prohibited a widespread practice in the newspaper telesales industry. See *Steinhebel v. Los Angeles Times Communications,* 126 Cal.App.4th 696, 24 Cal. Rptr.3d 351 (2005) (holding that chargebacks of advanced commissions when a customer cancels a subscription do not constitute the unlawful repayment of wages under § 221). In an observation that is directly relevant here, the *Steinhebel* court stated:

"No prior case has held the [challenged] practice to violate the California Labor Code, and we are pointed to no statute that expressly bars such a practice. In view of its widespread nature, we are

---

**14.** McCormick & Schmick allegedly employed only 604 individuals in California during the putative class period. (Notice of Removal at 4.) It estimates, however, that if Louie's interpretation of § 351 were found to be correct, it would be exposed to more than $6 million in liability. (*Id.* at 5–6.)

loath to hold the Labor Code bars such a practice by implication." *Id.* at 709, 24 Cal.Rptr.3d 351.

This rationale applies with greater force in this case, as the DLSE has expressly sanctioned the type of tip-sharing arrangement Louie challenges. DLSE is the state agency that enforces the Labor Code. As a result, in crafting tip-sharing arrangements that include bartenders, restaurants such as McCormick & Schmick presumably relied on the DLSE's pronouncements in the belief that such tip-sharing arrangements comply with California law. See *Tidewater Marine, Inc.*, 14 Cal.4th at 576, 59 Cal.Rptr.2d 186, 927 P.2d 296 (noting that regulatory agencies, by "publicizing a summary of its decisions and advice letters," provide "guidance to the public" on "important" issues). Because § 351 does not expressly prohibit this widespread industry practice, the court concludes that the Supreme Court would not interpret the statute to bar it were it presented with the question.

Consequently, the court finds—either as a matter of controlling California authority under *Leighton* and *Jameson*, or based on a prediction as to how the California Supreme Court would rule were it presented with the issue—that restaurants may, in compliance with § 351, require servers to share tips with non-managerial employees such as bartenders who routinely contribute to the service of patrons, whether or not such employees provides any service, direct or indirect, to a particular server's customers. McCormick & Schmick's motion to dismiss Louie's § 351 claim is therefore granted.

### C. Plaintiff's Remaining Claims

McCormick & Schmick contends, and Louie does not dispute, that the viability of her remaining causes of action—for violation of the UCL, Business & Professions Code §§ 17200 et seq., and the Labor Code Private Attorneys General Act, Labor Code §§ 2698 et seq.—depends on her ability to state a claim under § 351.[15] The court agrees. See, e.g., *Steinhebel*, 126 Cal.App.4th at 712, 24 Cal.Rptr.3d 351 ("While an employer's policy or practice that violates the Labor Code may also be held an 'unlawful business practice' under Business and Professions Code section 17200 et seq., where, as here, an employer's policy is lawful and permissible, there is no basis for relief under the unfair competition law," citations omitted); CAL. LABOR CODE § 2699(a) (authorizing an "aggrieved employee" to collect civil penalties under Labor Code where employer has violated any of its provisions). Because the court has determined that Louie has failed to state a claim for violation of Labor Code § 351, it accordingly grants defendant's motion to dismiss her remaining causes of action.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. Generally, when the court determines that a complaint must be dismissed, it liberally grants leave to amend so that plaintiff may make a further attempt to state a cognizable claim for relief. Where, however, a claim fails as a matter of law, granting leave to amend would be futile. See, e.g., *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts..."); *Cahill*, 80 F.3d 336, 339 (9th Cir.1996). Because this is

---

15. Def.'s Mem. at 3; see also Def.'s Reply at 11 ("Plaintiff's counsel do not dispute that, if an employer lawfully may require its servers to share some of the tips left at the dinner tables with the bartenders, then this whole case should be dismissed").

the case here, the court dismisses Louie's complaint with prejudice.