[No. B205005. Second Dist., Div. Three. Mar. 27, 2009.]

BRAD ETHERIDGE, Plaintiff and Appellant, v.
REINS INTERNATIONAL CALIFORNIA, INC., Defendant and
Respondent.

---

**COUNSEL**

Kingsley & Kingsley, Eric B. Kingsley, Darren M. Cohen and Brian Levine for Plaintiff and Appellant.

Spiro Moss Barness and Dennis F. Moss for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas & Associates and Russell J. Thomas, Jr., for Defendant and Respondent.

Law Offices of Steven Drapkin and Steven Drapkin; Paul, Hastings, Janofsky & Walker and Stephen L. Berry for California Restaurant Association and California Hotel & Lodging Association as Amici Curiae on behalf of Defendant and Respondent.

---

**OPINION**

**CROSKEY, J.**—Tip pooling, a practice by which tips left by patrons at restaurants and other establishments are shared among employees, is a common practice throughout California and the nation. No California statutes expressly address the practice. In this case, restaurant servers challenge the legality of a mandatory tip-pooling arrangement, whereby, as a condition of their employment, the servers must share tips with certain other employees at the restaurant. While the servers do not contest the requirement that bussers share in the tip pool, they challenge the inclusion of employees who do not provide "direct table service." The trial court sustained the demurrer of the restaurant without leave to amend, on the basis that employees who do not provide direct table service may, nonetheless, participate in mandatory tip pools. We agree and, therefore, affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*[1]

Defendant Reins International California, Inc. (Reins), operates several restaurants in California. Brad Etheridge and Hannah L. Hannah are, or were, employed by Reins as servers; they brought their complaint on behalf of the class of all persons who are, or have been, employed as servers by Reins within the four years immediately prior to the filing of their complaint.[2] The complaint alleged that Reins has a mandatory tip-pooling policy by which its servers are required to "tip out" certain categories of Reins's employees who do not provide direct table service. Specifically, it is alleged that servers are required to pay a share of their tips to the kitchen staff, bartender, and dishwashers.

Believing that requiring them to share tips with employees who do not provide direct table service violates the Labor Code, Etheridge brought suit. The operative complaint is his second amended complaint.[3] He alleges three causes of action for unlawful and unfair business practices (Bus. & Prof. Code, § 17200), based on the allegedly unlawful and unfair tip-pooling practices described above.[4] The fourth cause of action sought civil penalties under Labor Code sections 2698 and 2699, for violations of the Labor Code.[5] Each cause of action was based on Labor Code section 351, governing gratuities, and Etheridge's interpretation of that statute as prohibiting mandatory tip pooling benefitting employees who do not deliver direct table service to patrons.[6]

---

[1] The factual recitation is based upon the allegations of the complaint which, for purposes of this appeal, are assumed to be true.

[2] Etheridge and Hannah filed the original complaint as the plaintiffs. The record reflects, however, that only Etheridge filed a notice of appeal from the trial court's judgment of dismissal (although his brief on appeal purports to be on behalf of both of them). As a result, Etheridge is the only plaintiff and appellant in this appeal and, for purposes of convenience and clarity, we hereafter refer to him as such.

[3] A demurrer was sustained to the initial complaint on the basis that Etheridge could not pursue a private action for violation of the Labor Code. The demurrer to his first amended complaint was not heard; he was granted leave to file the second amended complaint.

[4] Each cause of action pertained to a different group of employees sharing in the tip pool—kitchen staff, bartenders, and dishwashers.

[5] These provisions "permit[] aggrieved employees to recover Labor Code penalties that previously could be pursued only by the Labor Commissioner." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1173 [78 Cal.Rptr.3d 572].)

[6] There is no private right of action for the violation of Labor Code section 351; such violations are actionable as unlawful business practices and may serve as the basis for an action for civil penalties under Labor Code section 2698 et seq. (*Lu v. Hawaiian Gardens Casino, Inc.* (2009) 170 Cal.App.4th 466, 473–477 [88 Cal.Rptr.3d 345].) Division Two of the First Appellate District recently disagreed with this conclusion, holding that there is a private right of action under Labor Code section 351. (*Grodensky v. Artichoke Joe's Casino* (2009) 171 Cal.App.4th 1399, 1422–1427 [91 Cal.Rptr.3d 732].)

Reins demurred, arguing that Labor Code section 351 does not limit tip-pooling participation to employees who provide direct table service. Reins argued that as long as tips were not shared with management (which Etheridge did not allege), the tip pool was permissible.

On August 9, 2007, the trial court sustained the demurrer without leave to amend. The court's order stated, "the entire action is dismissed with prejudice." On October 5, 2007, Etheridge filed a notice of appeal. Etheridge ultimately filed two notices of appeal in this case. After the first notice of appeal was filed, this court indicated that the appeal was in default for failure to pay the filing fee. In the apparent belief that the first notice of appeal was premature in the absence of a judgment, he chose not to pursue the first appeal, which was dismissed by this court on November 7, 2007. Instead, Etheridge returned to the trial court and obtained a judgment. Judgment was entered on December 27, 2007; notice of entry was served on January 8, 2008. On January 10, 2008, Etheridge filed his second notice of appeal, specifically indicating that he was appealing from the December 27, 2007 judgment.

Reins filed a motion to dismiss the second appeal, on the basis that a second appeal could not be taken from the same appealable order. We denied the motion without prejudice to its renewal based on, among other things, copies of the relevant documents from the trial court record. Reins did not renew its motion; instead, Reins included the relevant documents in a respondent's appendix and briefly addressed the issue in its respondent's brief.

Oral argument was heard on August 13, 2008. After argument, the court invited amicus curiae briefing on the issue of the legality of a mandatory tip pool requiring tips to be shared with employees who do not provide direct table service. The California Employment Lawyers Association filed an amicus curiae brief on behalf of Etheridge. The California Restaurant Association and the California Hotel & Lodging Association filed a joint brief as amici curiae on behalf of Reins. The parties were permitted to file responsive briefs to the briefs of the amici curiae.

## ISSUES ON APPEAL

There are two issues presented by this appeal: (1) whether Etheridge is barred from proceeding on the second notice of appeal by the dismissal of the first appeal; and (2) whether a mandatory tip pool, whereby restaurant tips are shared with employees who do not provide direct table service, is violative of Labor Code section 351.

## *DISCUSSION*

### 1. *The Appeal May Proceed*

■ The August 9, 2007 order sustaining the demurrer states that "the entire action is dismissed with prejudice." It is signed by the trial court. "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ." (Code Civ. Proc., § 581d.) As a judgment, a dismissal is appealable. (Code Civ. Proc., § 904.1, subd. (a)(1).) Etheridge's first notice of appeal, taken from the August 9, 2007 dismissal order, was therefore properly taken from a judgment. His belief that the appeal had been prematurely taken from a nonappealable order was mistaken; he should have pursued the appeal, rather than allow it to be dismissed for failure to submit the filing fee.

Etheridge's second notice of appeal was filed on January 10, 2008, after he had obtained a document entitled "Judgment." There is no question that if we construe this notice of appeal as being taken from the earlier filed dismissal,[7] the appeal is timely.[8] The only question is whether the dismissal of the first appeal, for failure to pay the filing fee, bars Etheridge from pursuing a second appeal of the same dismissal. It does not.

Guidance is supplied by our Supreme Court's decision in *Swortfiguer v. White et al.* (1901) 6 Cal.Unrep. 779 [66 P. 81]. In that case, the plaintiff filed a notice of appeal from a superior court judgment. While that appeal was pending, the trial court attempted to modify its judgment; the plaintiff then filed a notice of appeal from the modified judgment, and attempted to pursue the second (but apparently not the first) appeal. As the purported modification to the judgment was made without jurisdiction, the modified judgment was void. The court therefore dismissed the second appeal on defendant's motion. The plaintiff was ultimately permitted to pursue her appeal with the first notice of appeal and the record she had filed in the second appeal. Defendant's argument against this was considered "too technical to prevail against the consideration that the plaintiff, having a valid appeal and a printed

---

[7] "[I]t is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289]; see Cal. Rules of Court, rule 8.100(a)(2).) There can be no doubt that, at all times, Etheridge sought to appeal the dismissal of the complaint due to the ruling on defendants' demurrer; he simply erred in identifying the order or judgment from which the appeal could properly be taken.

[8] No notice of entry was served with respect to the order of dismissal. Etheridge therefore had 180 days from the date of the entry of the dismissal to file his notice of appeal. (Cal. Rules of Court, rule 8.104(a).)

transcript of the record on file, ought not to be deprived of a hearing by the harmless mistake she made in seeking to prosecute the second appeal." (*Ibid.*) Similar considerations apply here. Etheridge filed two notices of appeal, as did the plaintiff in *Swortfiguer*, and mistakenly chose to proceed on the notice that was invalid. He should not be deprived of the right to appeal by the harmless mistake he made in seeking to prosecute the second, instead of the first, appeal. Were it necessary, this court would issue an order, nunc pro tunc, vacating the dismissal of the first appeal, in order to enable him to proceed to a resolution on the merits.

### 2. Tip Pool Participants Are Not Limited to Employees Who Provide Direct Table Service

#### a. Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

#### b. The Practice of Tipping

The practice of "tipping the providers of personal service has endured and is now a well-accepted part of our day-to-day lives." (*Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327, 1331 [126 Cal.Rptr.2d 231].) While a tip is "entirely gratuitous, entirely subjective and very personal" (*ibid.*), anecdotal evidence suggests that people tend to tip because they believe that they " 'don't get very good service if [they] don't add a tip.' " (*Id.* at p. 1336.)

Before discussing the legislative history of the relevant statute, a brief explanation of two practices related to tipping is helpful. The first is a practice known as a "tip credit," by which an employer credits a certain amount of the tips received by an employee against the employee's wages. In

other words, when using a tip credit, the employer pays the employee less than minimum wage, with the understanding that the employee's tips will make up the difference. As will be discussed at length, tip credits against minimum wage are permissible under the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 203(m)); tip credits against minimum wage were once permitted under California law, but were subsequently prohibited by statute (*Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1270–1275 [252 Cal.Rptr. 278, 762 P.2d 442]).

■ The second practice, the one specifically at issue in this case, is mandatory tip pooling.[9] In tip pooling, some of the tips received by tipped employees are shared with other employees at the business. This case raises the issue of precisely *which* other employees may participate in a tip pool. In one type of tip pool, the pool is designed to spread the risk of low-tipping patrons among all tipped employees; thus, only tipped employees may participate in tip pools. In another type of tip pool, the pools are designed to share tips with nontipped employees who are considered deserving of tips, but who, for some reason (perhaps tradition, or location) are generally not tipped by patrons.

The practices of tip crediting and tip pooling are not unrelated. One can conceive of a situation in which a tip-crediting employer (1) requires tipped employees to submit to the tip pool *all* tips received in excess of the amount necessary to guarantee that the employee receives the equivalent of minimum wage; and (2) uses the tip pool and the tip credit to avoid paying all of its nontipped employees minimum wage as well. Indeed, California's Industrial Welfare Commission (IWC) discovered, " 'during the time that tip credit was allowed[,] . . . tip sharing was required to such an extent that the traditional tipped employees were subsidizing the minimum wages of other classifications.' " (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 729 [166 Cal.Rptr. 331, 613 P.2d 579].) This appears to be one of the reasons why tip crediting was ultimately prohibited in California. (*Id.* at pp. 729–730.)

Even though an employer can no longer use tip sharing to subsidize minimum wages of nontipped employees, it is possible that an employer could use tip sharing to subsidize *market wages* of nontipped employees, resulting in the same evil. Thus, when considering tip pooling, it is important to make certain that the employer is not using the tip pool as a de facto tip credit against market wages.

---

[9] This case is not concerned with any purely voluntary tip-pooling arrangement. "Tip pooling," when used in this case, refers to a mandatory tip-pooling arrangement imposed by an employer on the employees.

c. *The History of Tip Crediting and Tip Pooling in California*

The history of tip crediting and tip pooling in California was set out at length in *Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at pages 1270–1275. The history began in 1917, with a statute providing that an employer who required an employee to pay the employer any portion of the tips received by the employee was guilty of a misdemeanor. (*Id.* at p. 1270.) In 1918, the California Supreme Court struck down that statute as violative of substantive due process and freedom of contract. (*Id.* at pp. 1270–1271, citing *In re Farb* (1918) 178 Cal. 592 [174 P. 320].) In the course of its opinion, the Supreme Court had noted that if there were any fraud on the public regarding the disposition of tips, it could be easily overcome by legislation requiring the employer to post a notice explaining the terms under which the employer was to receive the benefit of the gratuities paid. (*Henning*, at pp. 1270–1271.)

In an apparent response to this ruling, the Legislature enacted a statute in 1929 which provided that if the employer took any of the tips from its employees, or credited tips against the employee's wages, the employer was required to post a notice explaining the disposition of the tips, and the extent to which the employer was taking a tip credit against the wages due the employees. (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at p. 1271.) The statute specifically expressed that its purpose was to prevent a fraud upon the public in connection with the practice of tipping. (*Ibid.*)

Eventually, this statutory requirement was codified in the Labor Code. Labor Code section 351, enacted in 1937, provided that an employer taking a portion of its employees' tips or crediting them against wages was required to post a notice regarding the disposition of tips. Labor Code section 356 expressed that the purpose of the article was to prevent fraud on the public in connection with the practice of tipping. (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at p. 1272.)

In 1968, the IWC adopted a wage order establishing a tip credit system, allowing tips to be credited against minimum wage to a certain extent (at the time, 20 cents per hour). (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at pp. 1272–1273.) Beginning in 1972, efforts began in the Assembly to eliminate the tip credit system. Bills were introduced to eliminate the "notice" language written in Labor Code section 351, and replace it with language providing that every gratuity is declared to be the sole property of the employee to whom it was paid or given. While the bills were not initially

successful,[10] their legislative history indicated that the effect of the proposed language would have been to eliminate the IWC's wage order permitting a tip credit against minimum wage. (46 Cal.3d at pp. 1273–1275.)

Ultimately, in 1975, the attempts to amend Labor Code section 351 to eliminate the tip credit were successful. A memorandum by the Assembly Committee on Industrial Relations on the successful legislation indicated that the basis of the bill " 'would appear to be that tips or gratuities are given for individual excellence of service above and beyond the basic duties of the employment, and as such, the employer has no vested right to consider tips a part of wages.' " (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at p. 1275, quoting Assem. Com. on Labor Relations, mem. on Assem. Bill No. 232 (1975–1976 Reg. Sess.) p. 1.)

Labor Code section 351 was amended to provide, "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. *Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.*" (Italics added.) Labor Code section 356, which provided that the purpose of the article was to prevent fraud on the public in connection with the practice of tipping, remained untouched.

With a minor exception, the language of Labor Code sections 351 and 356 in 1975 is the current language of these provisions.[11] In 1988, the Supreme Court was required to determine whether the current language of Labor Code section 351 permitted the IWC to adopt a two-tier minimum wage, with a lower wage for employees who customarily receive tips. The court concluded that the two-tier minimum wage was prohibited by Labor Code section 351. (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at p. 1265.) The employers had argued that a two-tier minimum wage did not create a fraud on the public, and Labor Code section 356 indicated that preventing fraud on the public was the purpose of Labor Code section 351. The court acknowledged the language of Labor Code section 356, but reasoned that "the prevention of fraud cannot be deemed the sole purpose of [Labor Code]

---

[10] At one point, the Legislature had passed a version which declared tips to be the employees' property, but added language which allowed tip crediting pursuant to valid regulation and with posted notice. (*Henning v. Industrial Welfare Com., supra*, 46 Cal.3d at p. 1274.)

[11] Labor Code section 351 was amended in 2000 to add a provision preventing employers from passing on to employees a share of credit card processing fees for gratuities paid by credit card. (Stats. 2000, ch. 876, § 9.)

section 351 *in its current form.*" (46 Cal.3d at p. 1280, original italics.) Instead, the court focused on the legislative intent of the 1975 amendment to Labor Code section 351. Considering the legislative history, the court concluded that the legislative intent of the current version of the statute is as follows: "the Legislature has declared that tips belong to the employee and the IWC may not permit an employer to obtain the benefit of such tips by paying a tipped employee a wage lower than he would be obligated to pay if the employee did not receive tips. More narrowly, it has declared that the IWC may not permit an employer to use a 'tip credit' to pay a tipped employee a wage lower than the minimum wage he would be obligated to pay if the employee did not receive tips."[12] (46 Cal.3d at p. 1278.)

### d. *Tip Pooling Is Not Prohibited by Labor Code Section 351*

With Labor Code section 351 providing that "[e]very . . . gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for," it was only a matter of time before an employee would challenge the process of tip pooling under the statute. After all, if a gratuity truly is the sole property of the employee to whom it is paid, the employee arguably should not be required to pool a portion of that gratuity with other employees. That challenge arose in *Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062 [268 Cal.Rptr. 647] (*Leighton*).

*Leighton* concerned a restaurant server who had been required to share tips with bussers and bartenders at the restaurant. Under the restaurant's policy, servers were required to give 15 percent of their tips to bussers and 5 percent of their tips to the bartender. (*Leighton, supra,* 219 Cal.App.3d at p. 1066.) The plaintiff participated in the tip pool for several years, but eventually chose not to tip the bussers because she believed they had not been helpful.[13] Her employment was terminated, and she brought a cause of action for wrongful discharge. Additionally, the plaintiff asserted a separate cause of action for repayment of moneys she had paid the bussers and bartenders. Summary judgment was granted in favor of the employer, and the plaintiff appealed.

---

[12] Similarly, the Supreme Court had previously stated, with respect to the same statute, "The Legislature could rationally determine (1) that, for minimum wage purposes, employers should not receive the benefits of gratuities that customers intend for the sole benefit of employees and (2) that employers should not be excused from the obligation of paying minimum wages to certain employees upon the uncertain possibility that such employees will in fact receive a predetermined amount of tips for their services." (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d at pp. 730–731.)

[13] The plaintiff was initially suspended for refusing to share her tips with the bussers. When she returned to work, management asked if she would comply with the tip-pooling requirements. When the plaintiff "indicated she might if the [bussers] did their job, she was fired." (*Leighton, supra,* 219 Cal.App.3d at p. 1066.)

On appeal, Division Seven of the Second Appellate District court concluded that the summary judgment could be affirmed if, *as a matter of law*, tip pooling was not prohibited by Labor Code section 351. (*Leighton, supra,* 219 Cal.App.3d at p. 1067.) Over a dissent, the court concluded that tip pooling was not so prohibited.[14] First, the court looked to the language of Labor Code section 351, and found significant the fact that the law was *silent* as to tip pooling; presumably, if the Legislature had intended to prohibit or regulate tip pooling, it easily could have done so. (219 Cal.App.3d at p. 1067.) Second, the court found nothing in the legislative history of Labor Code section 351 which precluded tip pooling. Third, the court could find "no established policy" in California against tip pooling, and, in fact, recognized that "the restaurant business has long accommodated this practice which, through custom and usage, has become an industry policy or standard . . . ." (219 Cal.App.3d at p. 1067.)

The *Leighton* court then addressed the plaintiff's argument that a mandatory tip pool violates Labor Code former section 351's prohibition on an employer "tak[ing] any gratuity or a part thereof, paid, given to or left for an employee by a patron." The plaintiff argued that, by reassigning a portion of the tip proceeds to the bussers, the restaurant was exercising dominion over that portion of her tips. (*Leighton, supra,* 219 Cal.App.3d at pp. 1068–1069.) The *Leighton* court disagreed, again citing three reasons. The first two of the court's reasons disagreed with the plaintiff's underlying premise that the gratuities in question *belonged to the server* in the first place. First, the court addressed the plaintiff's argument that the tips belonged to her because the restaurant had failed to establish that the intent of the patrons, in leaving tips, was to give a gratuity to anyone *other* than the server. The court disagreed, relying not on evidence of patron intent but on its own understanding of the statutory language and the practical inability to determine any patron's intent.[15] The court stated, "We dare say that the average diner has little or no idea and does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it.

[14] Neither Etheridge nor amicus curiae California Employment Lawyers Association suggests that *Leighton* was wrongly decided and that tip pools are never permissible in California. *Leighton* was decided in 1990, and Labor Code section 351 was amended by the Legislature in 2000, but no change was made to the language in Labor Code section 351 which had been interpreted by the *Leighton* opinion. " '[W]hen, as here, the Legislature undertakes to amend a statute which has been the subject of judicial construction' 'it is presumed that the Legislature was fully cognizant of such construction . . . .' [Citations.]" (*People v. Garcia* (2006) 39 Cal.4th 1070, 1087–1088 [48 Cal.Rptr.3d 75, 141 P.3d 197].)

[15] The *Leighton* dissent disagreed, suggesting that admissible survey evidence of patron intent could surely be obtained, and arguing that it was the defendant's burden to present such evidence to justify its tip pool. (*Leighton, supra,* 219 Cal.App.3d at pp. 1082–1083 (dis. opn. of Johnson, J.).) Amicus curiae California Employment Lawyers Association takes this position in its brief. The *Leighton* majority has already rejected this argument.

This, and the near impossibility of being able to determine the intent of departed diners in leaving a tip, in our view, account for the Legislature's use of the term 'employees' in declaring that '[e]very such gratuity is hereby declared to be the sole property of the employee or *employees* to whom it was paid, given, or left for.' ([Lab. Code,] § 351, italics added.) It is clear that the Legislature intended by this section to cover just such a situation." (219 Cal.App.3d at p. 1069, fn. omitted.) The court went on to state its belief that, as a practical matter, diners do not *consciously* determine exactly which persons servicing their table are responsible for an increased or decreased tip, and instead tip based on the entire experience. The court stated that prompt and efficient service from the busser can result in a generous tip even if the server was less than satisfactory, while inattentive and slow service from the busser can result in a smaller tip even if the server was efficient. (*Id.* at pp. 1069–1070.)

■ The *Leighton* court's second reason for rejecting the plaintiff's argument that a tip pool is an improper "taking" of the server's tip was, again, a rejection of the server's unspoken premise that the gratuity left is the server's sole property. The *Leighton* court recognized that when multiple employees— such as a server and a busser—provide service to a patron, a gratuity left on the table is left for those *employees*, not the first employee to pick it up. It is neither the server's sole property nor the busser's sole property. Thus, a tip pool which equitably distributes the tip does not constitute a taking of the property of either employee. (*Leighton, supra*, 219 Cal.App.3d at p. 1070.)

Finally, the court identified policy reasons for concluding that tip pooling does not violate Labor Code section 351. The court stated that "an employer-mandated tip pooling policy is one of common sense and fairness, and protects the public, the employees and the restaurant employer. The public leaves a tip for those employees who actually service the table, and has a right to expect that those employees receive the gratuity to the exclusion of the employer." (*Leighton, supra*, 219 Cal.App.3d at p. 1070.) The court emphasized that the mandatory tip-pooling process protected employees, so that the share of tips received by each employee would be fairly determined in advance by the employer, and would not be subject to the whim of the employee who first picks up the tip. The court concluded that a tip pool encourages *all* employees to give the best possible service, which ultimately benefits the employer and all employees. (*Id.* at p. 1071.)

■ In sum, the *Leighton* court held that mandatory tip pools among employees are not violative of Labor Code section 351.[16] Therefore, the plaintiff could not prevail on her cause of action for wrongful termination.

[16] This division recently reached the same conclusion in the factual context of casino card dealers. (See *Lu v. Hawaiian Gardens Casino, Inc., supra*, 170 Cal.App.4th 466.)

### e. *Employees Who Participate in the Chain of Service May Participate in Tip Pools*

*Leighton* is the first California opinion regarding the legality of mandatory tip pools, and is the foundation from which all other cases begin their analysis.[17] As the plaintiff in *Leighton* had been terminated for refusing to share tips with the bussers, the main thrust of the analysis in *Leighton* was whether bussers could share in tip pools. Some of the language used in *Leighton* appeared to find it significant that bussers provide "direct table service." (E.g., *Leighton, supra,* 219 Cal.App.3d at pp. 1067 [standard industry practice is to distribute tips among employees "who directly provide table service to a patron"], 1069 [assumes patrons intend to reward good service "no matter which one of the employees directly servicing the table" renders it], 1070 [gratuities left on a table are left for all employees who "directly serve the table"].)

 Based on this "direct table service" language in *Leighton,* Etheridge argues that the tip pool in the instant case is illegal because he is forced to share his tips with kitchen staff, dishwashers, and bartenders, none of whom provide direct table service to patrons. This is too narrow a reading of *Leighton.* First and foremost, the *Leighton* facts involved a tip pool shared with bartenders, not just bussers, and the *Leighton* plaintiff alleged a cause of action for a refund of the moneys paid the bartenders as well as the bussers. When actually addressing the issue of bartenders, the *Leighton* majority backed off from the "direct table service" language, and instead stated that gratuities belong "to the employee[s] who contributed to the service of that patron."[18] (*Leighton, supra,* 219 Cal.App.3d at p. 1072, fn. 6.) The court stressed that it was concerned with protecting the property rights of *all* employees, including bartenders, who "render service to the same patron." (*Ibid.*) Thus, it is apparent that although the court used "direct table service"

[17] Division Eight of the Second Appellate District recently issued an opinion concluding that *Leighton* does not limit tip pool participants to employees providing direct table service, and instead allows all employees who provide "indirect" table service to participate as well. (*Budrow v. Dave & Buster's of California, Inc.* (2009) 171 Cal.App.4th 875 [90 Cal.Rptr.3d 239].) This conclusion does not appear to be significantly different from the "chain of service" standard adopted in this opinion.

*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 141 [131 Cal.Rptr.2d 771], concluded that a tip pool benefitting "floor managers" was illegal because floor managers had sufficient supervisory duties to be considered the employer's agents rather than employees. There is no issue in the instant case about management participation in the tip pool.

[18] The *Leighton* court stated, "Primarily the dissent is based upon the premise that the gratuity left by a patron, unless he specifies otherwise, belongs to the [server] alone to the exclusion of the [busser] and bartender. We have held that the gratuity, unless otherwise specified by the patron, belongs to the employee[s] who contributed to the service of that patron." (*Leighton, supra,* 219 Cal.App.3d at p. 1072, fn. 6.)

language when discussing bussers, the court's *holding* included bartenders and its *rationale* for that holding extended to all employees who contribute to the service of the patron.

Second, any attempt to limit the *Leighton* court's reasoning to apply only to employees who provide direct table service is unpersuasive. Indeed, it is questionable whether the *Leighton* court's result of allowing *bussers* to participate in the tip pool would be consistent with a direct table service requirement. While, in some restaurants, the duties of bussers include filling water glasses, bringing rolls and butter, clearing the table between courses and pouring coffee (*Leighton, supra*, 219 Cal.App.3d at pp. 1069–1070), it is certainly not always the case that patrons receive *direct* service from bussers. At some restaurants, servers handle the coffee; at many restaurants, water conservation is practiced and water is not delivered unless requested; at some meals, there are no rolls and butter; in some circumstances, all of the food is served at once, and the busser does not clear the table until after the patron departs. But a "direct table service" limitation would allow a busser to participate in a tip pool if the busser clears the plates while the patron is still seated at the table, but not to participate if the busser waits until after the patron has departed. The work is the same; the next patron still starts his dining experience with an equally clean table, but the busser who cleans between patrons would be barred from participating in the tip pool because he does not personally interact with any patrons. This illogical result casts doubt on any "direct table service" requirement.

■ Moreover, the factors on which the *Leighton* court relied to conclude that tip pooling was not a taking of the server's personal property apply at least as strongly when considered with respect to employees who *contribute* to a patron's service, rather than only those employees who provide *direct* table service. First, the *Leighton* court stated, "We dare say that the average diner has little or no idea and does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it." (*Leighton, supra*, 219 Cal.App.3d at p. 1069.) The same holds true with respect to all employees who contribute to a patron's service. If the plates on which the food is served are not clean, the food received is not hot, or is not as ordered, the patron may be inclined to leave a smaller tip even when the services of the servers and bussers were satisfactory. Likewise, when the meal is delicious, the presentation on the plates beautiful, and special food requests have been satisfied, the patron may be inclined to leave a generous tip, even when the servers and bussers might not have delivered exceptional service. In short, a patron tips on all of the service received, not simply the service received by employees the patron can see. Second, the *Leighton* court noted that when a tip is left on the table, it becomes the property of all employees who directly serviced the table; again,

the rationale applies equally to employees who participate in the service of that table. Finally, the *Leighton* court concluded that a mandatory tip pool is supported by "common sense and fairness, and protects the public, the employees and the restaurant employer." (*Id.* at p. 1070.) These policy reasons extend to mandatory tip pools which include employees who do not provide direct table service, but participate in the chain of service. Dishwashers and other kitchen staff are encouraged to give their best possible service as they know they will participate in the financial rewards if the customers are pleased with their work, even though the customers do not personally see them doing it. And a mandatory tip pool makes certain that these employees receive their fair share when the patrons *are* pleased with their service, but have no way to tip them directly.[19]

■ In short, both the holding in *Leighton* and the *Leighton* rationale mandate the conclusion that tip pooling is not illegal when the participants in the tip pool contribute to the patron's service, even if not providing direct table service. Recently, a federal court faced with the same issue interpreted *Leighton* in precisely the same manner. (*Louie v. McCormick & Schmick Restaurant Corp.* (C.D.Cal. 2006) 460 F.Supp.2d 1153, 1158–1160.)[20]

### f. The Fair Labor Standards Act Provides No Guidance

In the reply brief on appeal, Etheridge suggested that the tip-pooling restrictions of the federal Fair Labor Standards Act (FLSA) could be helpful

---

[19] Division Two of the First Appellate District recently issued an opinion which concluded that tip pool participants may include any employee, not an agent of the employer, who contributed to a customer's pleasant experience, regardless of whether the customer intended that employee to share in the tip. (*Grodensky v. Artichoke Joe's Casino, supra*, 171 Cal.App.4th at pp. 1443–1447.)

[20] In Etheridge's brief in response to the amici curiae brief filed by the California Restaurant Association, et al., Etheridge argues that another federal case, *Matoff v. Brinker Restaurant Corp.* (C.D.Cal 2006) 439 F.Supp.2d 1035, "interpreted *Leighton* as establishing a 'direct table service' requirement for mandatory tip pools." This is an overstatement of the *Matoff* opinion. That court was concerned with whether a plaintiff who alleged a mandatory tip pool requiring servers to share tips with bartenders stated a cause of action. The court stated, "While mandatory tip pooling has been found not to violate section 351 when the participants in the pool directly serve customers, see [*Leighton*], Plaintiff has alleged that servers in Defendant's restaurants were required to share tips with bartenders who did not provide such direct service. Because the tip pool is mandatory, if it is unlawful, it may constitute an employer's unlawful taking of employee's tips within the meaning of section 351." (*Matoff v. Brinker Restaurant Corp., supra*, 439 F.Supp.2d at p. 1038.) In other words, the *Matoff* opinion noted that *Leighton* upheld a tip pool when the participants provided direct table service, and considered it an open question ("if it is unlawful") whether a tip pool with participants who did not provide direct table service would be permissible. When the *Matoff* court eventually reached that question in an unpublished opinion, it concluded that such a tip pool was proper, stating that a "direct service requirement" was a "distort[ion]" of the language of *Leighton*. (*Matoff v. Brinker Restaurant Corp.* (C.D.Cal., June 12, 2007, No. CV 06-2839 PSG) 2007 U.S.Dist. Lexis 82561, p. *11.)

in interpreting the restrictions imposed by Labor Code section 351.[21] When seeking amicus curiae briefing, we invited the amici curiae and the parties to "consider the effect, if any" of the FLSA. We now conclude the FLSA provides no guidance in this case.[22]

The main reason for this conclusion is that the requirements of the FLSA are wholly distinguishable from the requirements of Labor Code section 351. Most importantly, unlike California law, the FLSA *permits* tip crediting. (29 U.S.C. § 203(m).) However, the FLSA permits tip crediting *only* if, among other restrictions, "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." (29 U.S.C. § 203(m)(2).) The FLSA has no other mention of tip pooling, and apparently has no restriction on tip pooling when the employer is not taking a tip credit.

■ In other words, Labor Code section 351 permits tip pooling *except* when the tip pooling operates as a tip credit, while the FLSA permits tip pooling, but restricts it *when* the employer is taking a tip credit. The FLSA's restrictions on tip pooling have the purpose of rendering a tip credit permissible. As the purpose behind the tip-pooling restriction in the FLSA is incompatible with California's prohibition on tip crediting, the FLSA can provide no guidance in this case.[23]

---

[21] Before the trial court, the parties also relied on two administrative interpretations of *Leighton*, issued by California's Department of Industrial Relations, Division of Labor Standards Enforcement. Ultimately, statutory interpretation is an issue for the courts. The court is to independently judge the text of the statute; the agency's interpretation is just one of several tools available to the court. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) In this case, there is no reason to defer to the agency on its case-specific attempts to apply *Leighton*.

[22] The FLSA does not preempt California labor laws. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 567 [59 Cal.Rptr.2d 186, 927 P.2d 296]; *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 250–251 [211 Cal.Rptr. 792].)

[23] In any event, interpretation of the FLSA requirement has been by no means uniform. Under the FLSA, when the employer takes a tip credit, tip pool participants are limited to those employees " 'who customarily and regularly receive tips.' " One court has held that only employees who interact with customers can participate in such a tip pool. (*Hai Ming Lu v. Jing Fong Restaurant, Inc.* (S.D.N.Y. 2007) 503 F.Supp.2d 706, 711.) Another court disagreed with the direct customer interaction requirement, noting that bussers may participate in tip pools even though they generally do not perform their duties until after the customers have completed their dining experience. (*Lentz v. Spanky's Restaurant II, Inc.* (N.D.Tex. 2007) 491 F.Supp.2d 663, 670–671.) One court noted that, under federal law, an employee "customarily and regularly receives tips" if that employee customarily receives tips *from a tip pool.* The court recognized the circularity in this conclusion, but was not troubled by it because the employer could only take a *tip credit* for those employees engaged in an occupation in which tips were customarily received—thereby implying a customer interaction requirement for tip

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Kitching, J., concurred.

**CROSKEY, J.,** Concurring.—In the majority opinion, this court concludes that participants in mandatory tip pools need not provide direct table service; any employee who contributes to the service a patron receives may participate in a tip pool. I write additionally and separately to address the issues surrounding whether the law requires a mandatory tip pool to be fair and reasonable in order to avoid violation of Labor Code section 351.

Etheridge's operative complaint alleges, "Defendants collect and require that 'servers' tip out of seven percent (7%) of their food sales to the kitchen"; "Defendants collect and require that 'se[r]vers' tip out of seven percent (7%) of their drink sales to the bartender"; and "Defendants collect and require that 'servers' tip out of five dollars ($5.00) for every one thousand dollars in sales to the dishwasher." The "tip out of" language is ambiguous; it is not clear if Etheridge is alleging that defendants required him to give (1) an amount equal to 7 percent of the amount of *their food and drink sales* to the kitchen and bartender respectively; (2) an amount equal to 7 percent of their *tips based on food and drink sales* to the kitchen and bartender respectively; or (3) a different amount entirely. Etheridge argues that he has alleged that Reins requires him to tip the kitchen staff and bartender 7 percent of food and drink *sales*, and the dishwasher one-half of 1 percent of *sales*.[1] While such a tip pool contribution appears so high as to be unlikely as a factual matter, case law indicates that it would not be unprecedented. (See, e.g., *Elkins v. Showcase, Inc.* (1985) 237 Kan. 720 [704 P.2d 977, 980–981] [concerning a mandatory tip pool contribution of 6 percent of sales, which amounted to approximately 72 percent of tips].) It would seem that, if Etheridge is, in fact, alleging that he was required to give the kitchen and bartender 7 percent of his sales, this amount could comprise nearly half of his tips, and would appear to be an amount well in excess of any common industry practice for tip pool contributions.

In Etheridge's complaint, he alleged that any tip-pooling arrangement must be fair and reasonable. However, as he alleged that the tip pool in this case was unfair only because it shared tips with individuals who did not provide direct table service, this appeared to be a restatement of his argument under

---

*crediting* but not for *receiving pooled tips* from other employees for whom a tip credit is taken. (*Kilgore v. Outback Steakhouse of Florida, Inc.* (6th Cir. 1998) 160 F.3d 294, 300–301.)

[1] Defendants, in its respondent's brief, does not interpret the complaint in this manner.

*Leighton.* Unsure as to whether Etheridge had also alleged that the tip pool was unfair and unreasonable on the basis that it gave an unreasonably large percentage of the tips to nonserver employees, this court sought additional briefing on the issues of (1) whether a cause of action could independently exist for an unfair and inequitable tip pool, aside from the issue of direct table service; and (2) whether Etheridge had alleged an unfair or inequitable tip pool, or could amend the complaint to do so. We indicated that he should identify specific facts which he had alleged, or truthfully could allege, in order to establish the tip pool is unfair or inequitable in its calculation and/or allocation of pooled tips. His response on this latter point was to reassert the allegations that the tip pool was unreasonable because it was not based on direct table service. He then stated simply, "If the Court decides that direct table service is not the standard to evaluate tip pool inclusion and the corresponding degree of participation, then [he] should be permitted to file an amended complaint alleging a violation under the chain of service standard. [He was] prepared to allege that the tip schedule was unreasonable because it is not tied to the employee's or category of employees' contribution to the service of the patron." These two sentences do not comply with our request to identify "specific facts [which could truthfully be alleged that would] establish the tip pool is unfair or inequitable in its calculation and/or allocation of pooled tips."

While Etheridge has not alleged a factual basis for a cause of action for an unfair or inequitable tip pool, it is my view that such a cause of action may be asserted in a proper case. That a tip pool, in order to be valid under Labor Code section 351, must be fair and equitable is, in my view, mandated by the rationale of *Leighton*. When that court concluded that the tips belong to all employees providing service to a patron, it stated that the tip was "to be *equitably distributed* between them." (*Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062, 1070 [268 Cal.Rptr. 647], italics added.) When that court stated that tip pooling advances the interests of the employees, it was because such a policy would "protect[] the personal property of the employees and *ensures a fair distribution of the gratuity* to those who earned it, making certain that each gets his *fair share*." (*Id.* at p. 1071, italics added.) In rejecting the dissent's argument that the majority expressed too little concern for servers' rights, the *Leighton* court stated, "We are just as much concerned about wages and working conditions for and the property rights of [servers] in eating establishments as is the author of the dissent, but we are just as concerned with the other employees, i.e., [bussers] and bartenders, who, as well, render service to the same patron. Our ruling is intended to ensure that all such employees be *placed in a fair and equitable position*. It is because we are not insensitive to the plight of those employees that our ruling allows for *a fair distribution of the gratuity to all those who earned it by contributing to the service* afforded the patron, which sharing can only promote

harmony among the employees, provide a peaceful environment in which to work and improve service to the public." (*Id.* at p. 1072, fn. 6, italics added.)

Thus a mandatory tip pool should only be sustained under Labor Code, section 351 when it works a fair and equitable distribution among the employees who participate in the tip pool. If that distribution is unfair or inequitable, it is effectively no different from the case where the employer takes a portion of the tips received by one employee and gives them to another in order to lessen the employer's own obligation to pay the second employee. As explained in the majority opinion, such conduct constitutes a violation of Labor Code section 351.[2]

I recognize that such a cause of action would implicate serious policy concerns. The courts are ill equipped to determine whether, for example, bussers at a particular restaurant provide 5 percent or 10 percent of the service received by a patron, and are even less equipped to determine whether a *specific* busser earned his or her specific share. (Cf. *Leighton, supra,* 219 Cal.App.3d at p. 1071 [explaining that it is the *employer*, not the server, who is to determine whether fellow employees are properly doing their jobs].) Just as the business judgment rule insulates from court review management decisions made by corporate directors in good faith in what they believe is the organization's best interests (see, e.g., *Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121 [86 Cal.Rptr.3d 145]), so should an employer's good faith tip pool distribution policy be accorded a substantial level of deference. Nonetheless, in a proper case, where an employee is able to allege facts reflecting a tip pool that is so inequitable that it appears to bear no relation to the participants' efforts in the chain of service, a remedy must be provided. (See, e.g., Cal. Dept. of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter No. 1998.12.28-1 (Dec. 28, 1998) p. 3 [stating that "[w]hile an employer must have the necessary discretion and latitude to implement a tip pooling distribution that is appropriate to circumstances that may be unique to a particular restaurant, a tip pooling distribution that is patently unfair or unreasonable would violate Labor Code §[]351."].) To hold otherwise would leave an aggrieved employee subject to even arbitrary decisions by an employer and with no recourse other than to leave his or her employment.

---

[2] Division Two of the First Appellate District recently reached a different conclusion, stating simply that Labor Code section 351 "does not address . . . equitable considerations." (*Grodensky v. Artichoke Joe's Casino* (2009) 171 Cal.App.4th 1399, 1449 [91 Cal.Rptr.3d 732].) In my view, however, the *Grodensky* opinion failed to recognize that the rationale of the decision in *Leighton* was that mandatory tip pools do not violate Labor Code section 351 only when those tip pools are fair and equitable. If the tip pool distribution is unfair and inequitable, the tip is no longer the property of the "employees to whom it was paid, given, or left for," and thus would thereby violate Labor Code section 351, for the reasons explained in the majority opinion.

In addition to the proposition that any mandatory tip-pooling policy should be subjected to a fair and equitable standard, I share another view expressed by my dissenting colleague, Presiding Justice Klein. I believe this is an appropriate case for review by the Supreme Court.

**KLEIN, P. J.,** Concurring and Dissenting.—I concur in part 1. of the majority opinion, allowing plaintiff and appellant Brad Etheridge (Etheridge) to pursue the instant appeal. I otherwise dissent.

It is my view that employees who do not render direct table service may not share in the proceeds of an employer-mandated tip pool. I would hold Etheridge properly pled a cause of action against the employer for its mandatory tip-pooling policy which required him to share tips with employees who "do not provide direct table service and are back of the house employees." Because the complaint is well pled, the trial court should have overruled the employer's demurrer.

The judicial underpinning of the majority opinion here, which broadly expands the scope of employer-mandated tip pooling, is *Leighton v. Old Heidelberg, Ltd.* (1990) 219 Cal.App.3d 1062 [268 Cal.Rptr. 647] (*Leighton*). *Leighton* held employer-mandated tip pooling is not prohibited by Labor Code section 351. (*Leighton, supra*, at p. 1067.)[1] However, *Leighton* flies in the face of section 351, which provides "[e]very gratuity is hereby declared to be *the sole property of the employee or employees to whom it was paid, given, or left for.*" (Italics added.) Because section 351 guarantees that the gratuity is the "sole" property of the employee or employees for whom it was left, section 351 clearly prohibits the employer from appropriating any portion of the server's gratuity and diverting it to other employees.

I recognize the Legislature acquiesced in *Leighton*'s interpretation of section 351 by amending the statute without altering the portion previously construed by *Leighton*. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873] (*Harris*).) Regrettably, given that principle of statutory construction, this court is guided by *Leighton*'s interpretation that section 351 does not prohibit mandatory tip pooling and redistribution "among those employees, *who directly provide table service* to a patron . . . ." (*Leighton, supra*, 219 Cal.App.3d at p. 1067, italics added.)

However, the majority opinion does more than merely reiterate *Leighton*. It now extends *Leighton* to authorize employer-mandated tip pooling "when the participants in the tip pool *contribute* to the patron's service, *even if not*

---

[1] All further statutory references are to the Labor Code, unless otherwise specified.

*providing direct table service."* (Maj. opn., *ante,* at p. 923, italics added.) Because I believe *Leighton* was wrongly decided in the first instance, and was cut out of whole cloth without any factual basis as to the intent of the patron in leaving the gratuity, I decline to join the majority opinion's extension of *Leighton* to the class of employees who do not provide direct table service. As explained below, the instant majority's extension of *Leighton* to include in the tip pool any employees who "contribute to a patron's service" or who "participate in the chain of service" is unwarranted and simply compounds the error made by the *Leighton* majority in the first instance.

The majority opinion here eviscerates section 351's guarantee that a gratuity belongs to the employee or employees for whom it was left. The majority opinion authorizes the employer to confiscate a portion of the gratuities left for servers and to redistribute those monies to other employees, so as to subsidize the wages of nontipped employees, in accordance with the *employer's* self-interest and priorities.

For these reasons, the propriety and parameters of employer-mandated tip pooling warrant the prompt attention of the California Supreme Court or the Legislature.

1. *The* Leighton *Majority Disregarded the Plain Language of Section 351, Which Declares the Gratuity to Be the Sole Property of the Employee or Employees for Whom It Was Left;* Leighton *Dispensed with the Patron's Intent in Leaving the Gratuity As Unknowable or Irrelevant.*

The majority opinion here begins with a scholarly history of tip crediting and tip pooling in California. However, that discussion does not elucidate the critical issue in this case—does section 351, which guarantees the gratuity is the "sole" property of the employee or employees for whom it was left, prohibit the employer from appropriating a portion of the gratuity and diverting it to other employees?

The *Leighton* majority, and the majority of this court, hold section 351 does not *prohibit* employer-mandated tip pooling, and therefore the practice is *permitted.* However, a plain reading of section 351 reveals the statute does not give a green light for employer-mandated tip pooling. To the contrary, the statute prohibits it.

Section 351, which is found in division 2, part 1 of the Labor Code, relating to compensation, states in relevant part: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an

employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every such gratuity is hereby declared to be the *sole* property of the employee or employees *to whom it was paid, given, or left for. . . .*" (Italics added.) The significance of the property guarantee of section 351 is that it prohibits an employer from taking any portion of the gratuity left for a server and redistributing it to other employees.[2]

Case law demonstrates section 351 was enacted to prevent an employer from using the employee's tips to reduce the employer's minimum wage obligation. Prior to *Leighton*, "decisions . . . focus[]ed on whether this section prohibits employers from using an employee's tip income to discharge the employer's obligation to pay an employee the *minimum wage*. Thus, in *Industrial Welfare Commission* v. *Superior Court* (1980) 27 Cal.3d 690, 730 [166 Cal.Rptr. 331, 613 P.2d 579] the California Supreme Court held section 351 contemplated 'that tips received by an employee would not reduce an employer's *minimum wage* obligation, either directly or indirectly.' And in *Henning* v. *Industrial Welfare Commission* (1988) 46 Cal.3d 1262 [252 Cal.Rptr. 278, 762 P.2d 442] the court struck down a regulation establishing a lower *minimum wage* for employees who receive tips than for those who do not on grounds it violated section 351." (*Leighton, supra,* 219 Cal.App.3d at p. 1080 (dis. opn. of Johnson, J.), italics added.)

It is astounding that section 351, aimed at prohibiting an employer from using an employee's tips to reduce the employer's *minimum wage* obligation, was twisted by the *Leighton* majority into a legislative authorization for employer-mandated tip pooling.

Section 351 explicitly declares the gratuity is the *sole* property of the employee or employees *for whom it was left.* Inherent in that language is that the *patron's* intent in leaving the tip is controlling.

Despite section 351's focus on the intent of the patron in leaving the gratuity, the *Leighton* majority dismissed the patron's intent as irrelevant or unknowable, speculating: "*We dare say that the average diner has little or no idea and does not really care who benefits from the gratuity he leaves,* as long as the employer does not pocket it, because he rewards for good service no matter which one of the employees directly servicing the table renders it.

---

[2] If I were writing on a clean slate, I would hold section 351 gives rise to a presumption that irrespective of whether a tip is handed to an employee or left on the table, the tip is the sole property of the employee or employees who waited on the patron. Without an affirmative showing that the patron intended the gratuity be shared with other employees, the gratuity should be deemed the sole property of the employee or employees for whom it was left (§ 351), which in the usual case would be the server or servers who waited on the patron.

This, and the near impossibility of being able to determine the intent of departed diners in leaving a tip, in our view, account for the Legislature's use of the term 'employees' in declaring that '[e]very such gratuity is hereby declared to be the sole property of the employee or *employees* to whom it was paid, given, or left for.' (§ 351, [certain] italics added.)" (*Leighton, supra,* 219 Cal.App.3d at p. 1069, first italics added, fn. omitted.)

In a feat of judicial activism, the *Leighton* majority asserted, "an employer-mandated tip pooling policy is one of common sense and fairness, and protects the public, the employees and the restaurant employer." (*Leighton, supra,* 219 Cal.App.3d at p. 1070.) In so doing, the *Leighton* majority substituted its own judgment for that of the Legislature, which declared in section 351 that the gratuity is the *sole* property of the employee or employees for whom it was left.

The *Leighton* majority seized on the fact that section 351 refers to the employee *"or employees"* for whom the gratuity is left as some sort of legislative authority for employer-mandated tip pooling. However, as Justice Johnson pointed out in his well-reasoned dissenting opinion in *Leighton*, the *Leighton* majority made too "much of the presence of the plural word 'employees' in the clause containing the personal property guarantee in section 351. This language is necessary to accommodate situations where a customer intends and expressly declares that a given gratuity is intended for two or more employees or where a given customer is actually served by first one waiter then another (because of a change of shifts) and intends that both of them share in the gratuity or where a banquet giver pays a large gratuity intended to be shared by all the waiters who served those attending the banquet. But this does not mean it is up to the employer in the ordinary situation, *without the customers' knowledge*, to require the waitress to whom the customer gave the tip to divide that gratuity with other employees *the employer deems to have been the intended recipient of the customers' largess.* [¶] It is apparent in both sections 351 and 356 the Legislature intends that the *customers'* intent be implemented and that gratuities remain the personal property of the individual employee for whom the customer intended the gratuity to represent additional income. *If, and only if, the customer intends to reward more than one employee should a given gratuity be deemed the personal property of more than one employee."* (*Leighton, supra,* 219 Cal.App.3d at pp. 1083–1084 (dis. opn.), certain italics added.)

Justice Johnson correctly concluded, *"There is nothing in section 351 which reasonably can be read to support the proposition the employer is empowered to decide which employees the restaurant's customers intended to receive the tips they left.* The statute sets this up as a matter between the giver—the restaurant customer—and the receiver—the employee (or employees)—for whom the gratuity is left. It would be contrary to the intent that tip

income be the 'personal property' of the employees involved to give that kind of discretion to the employer." (*Leighton, supra,* 219 Cal.App.3d at p. 1083 (dis. opn.), certain italics added.)

2. Leighton *Further Erred by Misapplying Summary Judgment Principles.*

In addition to its statutory construction error, the *Leighton* majority erred in assigning the burden on summary judgment to the party opposing summary judgment, i.e., the employee/appellant.

In 1990, at the time *Leighton* was decided (as well as today), a defendant moving for summary judgment had the burden to show an entitlement to summary judgment. (*Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1421 [267 Cal.Rptr. 819]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Therefore, the burden rested with the employer in *Leighton* to make a proper showing in its moving papers in the trial court. As Justice Johnson demonstrated in his dissenting opinion in *Leighton*, the majority opinion therein contravened this rudimentary principle.

In *Leighton*, the employer "claim[ed] when a customer leaves a tip he or she leaves it not just for the waiter but for the busboy and the bartender. . . . *However, [the employer] submitted no evidence at the summary judgment hearing to support this contention about the intent of customers who leave tips.* Indeed the only evidence which either side attempted to introduce was a declaration by the appellant's attorney. He testified to having conducted a poll of approximately 30 restaurant customers all of whom said that when they left a tip it was solely for the waiter or waitress who had served them and not for the busboy or other restaurant employees. This evidence was ruled inadmissible, and properly so." (*Leighton, supra,* 219 Cal.App.3d at p. 1082 (dis. opn.), italics added.)

Nonetheless, "it was not appellant's burden to prove restaurant customers do *not* intend the tips they leave are to be divided among the waiter, the busboy and the bartender. *Instead it was [the employer's] burden to prove they do intend that result.* So the fact the appellant's evidence on this question is inadmissible does not constitute affirmative evidence on the opposite side of the issue. Accordingly, this remains a triable issue." (*Leighton, supra,* 219 Cal.App.3d at p. 1083 (dis. opn.), certain italics added.)

In short, *Leighton* affirmed a grant of summary judgment in favor of the defendant employer/movant, despite the absence of any evidence in the defendant's moving papers to support the employer's claim that the patron's

intent, in leaving the gratuity, was to benefit not only the server but also other employees who provided direct table service to the patron.

> 3. *This Court's Decision Is Informed by* Leighton's *Interpretation of Section 351 Due to Legislative Acquiescence Therein; However, the Majority Opinion Errs in Expanding* Leighton *by Extending Tip Pool Participation to All Employees Who "Contribute to the Service of a Patron" or Who "Participate in the Chain of Service."*

In 2000, 10 years after *Leighton* was decided, the Legislature amended section 351 by adding a provision relating to credit card processing fees.[3] The 2000 amendment did not alter the provision interpreted by *Leighton*. Although *Leighton* was wrongly decided, by amending section 351 without altering the language construed by *Leighton*, the Legislature is deemed to have acquiesced in *Leighton*'s interpretation. (*Harris, supra,* 52 Cal.3d at p. 1156 [" '[W]hen the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment.' "].)

However, the majority opinion here does more than merely reiterate the holding of *Leighton*. Instead, it rewrites *Leighton* by replacing its "direct table service" requirement (*Leighton, supra,* 219 Cal.App.3d at p. 1067) with a new standard—any employee who " 'contributes to the service of a patron' " or who " 'participates in the chain of service' " is entitled to share in the proceeds of the employer-mandated tip pool. This newly enunciated "chain of service" standard derives solely from footnote 6 of *Leighton*. (See maj. opn., *ante,* at p. 921, citing *Leighton, supra,* 219 Cal.App.3d at p. 1072, fn. 6.)

Nonetheless, footnote 6 of *Leighton* is no authority for that proposition. The language in footnote 6 that the gratuity "belongs to the employee who contributed to the service of that patron" (*Leighton, supra,* 219 Cal.App.3d at p. 1072, fn. 6) is merely a restatement of the *Leighton* majority's premise that the gratuity belongs to the employee or employees who "directly provide table service to a patron." (*Id.* at p. 1067.)

---

[3] The 2000 amendment to section 351 added the following language: "An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company. Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment." (Stats. 2000, ch. 876, § 9.)

Footnote 6 of *Leighton* is a thin reed upon which the majority opinion here attempts to lean. That footnote must be read in the context of the *Leighton* majority's description of the practice of tip pooling in the California restaurant industry, to wit: "the restaurant business has long accommodated this practice which, through custom and usage, has become an industry policy or standard, a 'house rule and is with nearly all Restaurants,' by which the restaurant employer, as part of the operation of his business and to ensure peace and harmony in employee relations, pools and distributes among those employees, *who directly provide table service to a patron* . . . ." (*Leighton, supra,* 219 Cal.App.3d at p. 1067, italics added.)

In reliance on footnote 6 of *Leighton*, the majority opinion here has rewritten and expanded the holding of *Leighton* to replace its "direct table service" requirement with a nebulous "participate[s] in the chain of service" standard (maj. opn., *ante*, at p. 923), so as to include peripheral employees in the tip pool. However, the "chain of service" standard is not grounded in *Leighton* and is potentially so broad as to encompass everyone from the restaurant designer to the individual who irons the napkins—all of whom, in one way or another, enhance the patron's dining experience.

Moreover, contrary to the majority opinion's reading of footnote 6, said footnote does not support an expansive "chain of service" approach to tip pooling. In footnote 6, the *Leighton* majority stated in pertinent part: "We are just as much concerned about wages and working conditions for and the property rights of waiters and waitresses in eating establishments as is the author of the dissent, but we are just as concerned with the other employees, i.e., busboys and bartenders, *who, as well, render service to the same patron.*" (*Leighton, supra,* 219 Cal.App.3d at p. 1072, fn. 6, italics added.) It therefore follows, for example, that if a particular dining patron did not order a drink from the bar, the restaurant's bartender did not render service to said patron and therefore, the *Leighton* majority would exclude said bartender from sharing in the tip left by that patron. The *Leighton* majority's view of permissible employer-mandated tip pooling is far narrower than what is endorsed by the majority opinion here.

Additionally, by supplanting the "direct table service" standard with an open-ended "chain of service" standard, the majority opinion here further dilutes the property rights of the employee or employees for whom the gratuity was left.

4. *Employer-mandated Tip Pooling Is Prohibited by Section 351
 Because the Statute Guarantees the Gratuity Is the Sole Property
 of the Employee or Employees for Whom It Was Left;
 Employer-mandated Tip Pooling Also Works a Fraud on
 Consumers in Violation of Section 356.*

It is troubling the *Leighton* majority and the majority here have strayed so far from the clear directive of section 351, which sought to guarantee the employees' right to a full minimum wage by declaring the gratuity the sole property of the employee or employees *for whom it was left.*

In protecting the property rights of the employee, section 351 also seeks to effectuate the intent of the *patron* in leaving the gratuity by declaring the gratuity the property of the employee or employees *for whom it was left.* In contravention of section 351, the majority opinion here vests the presumed "benevolent and fair-minded" employer with the sole discretion to determine "in advance" the share of tips to be received by each employee (maj. opn., *ante,* at p. 920), *even before the patron has been seated.* In so doing, the majority opinion nullifies section 351 by substituting the intent of the *employer,* as embodied in the employer's tip-pooling policy, for the intent of the *patron.* The majority opinion cuts the patron out of the loop and leaves the patron without a say in how the tip is allocated.

The majority opinion's interpretation empowers the employer to appropriate a portion of the tips left for a particular server and then redirect those tips to other employees whom the employer deems somehow to have enhanced the patron's dining experience. This redistribution rests on the fiction that all employees in the chain of service are the "employees to whom [the gratuity] was paid, given, or left for" (§ 351) and the further fiction that employer-mandated confiscation and reallocation of tips " 'protects the public, the employees and the restaurant employer.' " (Maj. opn., *ante,* at p. 923, quoting *Leighton, supra,* 219 Cal.App.3d at p. 1070.)

Additionally, the instant majority's interpretation of section 351 conflicts with section 356, the purpose of which is "to prevent fraud upon the public in connection with the practice of tipping . . . ." (§ 356.) Although it is the patron who is supposed to decide to whom the tip is to be "paid, given to, or left for" (§ 351), there is nothing to show the average patron is even aware that a portion of the tip the patron leaves for his or her server is being taken by the employer and redistributed, according to the employer's self-interest and priorities.

### 5. *Recent Cases Have Compounded the Error of Leighton.*

For two decades, *Leighton* lay dormant and was not relied upon by appellate courts to justify expansion of employer-mandated tip pooling. Suddenly, this year, various appellate courts have revisited *Leighton* and broadened its application.

In *Lu v. Hawaiian Gardens Casino, Inc.* (2009) 170 Cal.App.4th 466, 478 [88 Cal.Rptr.3d 345], this court, relying on *Leighton*, held section 351 does not prohibit tip pooling in the casino industry.

Thereafter, the First Appellate District issued its opinion in *Grodensky v. Artichoke Joe's Casino* (2009) 171 Cal.App.4th 1399 [91 Cal.Rptr.3d 732] (*Grodensky*). The *Grodensky* court, relying on *Leighton*, concluded a casino's policy of requiring a tip pool for dealers did not violate section 351. (*Grodensky, supra,* at pp. 1443–1449.) *Grodensky* held "[t]he statute permits an employer to require an employee to share the tips with all of the employees serving or attending to the customers." (*Id.* at p. 1446.) *Grodensky* reached this conclusion despite its recognition "that some customers may not have known that tips were shared" (*id.* at p. 1446, fn. 8), and that "the statute's clear intent is to prevent the public from being defrauded." (*Id.* at p. 1449.)

Another recent decision is *Budrow v. Dave & Buster's of California, Inc.* (2009) 171 Cal.App.4th 875, 884 [90 Cal.Rptr.3d 239] (*Budrow*), in which Division Eight of this district held that "bartenders . . . may participate in tip pools established pursuant to section 351," without regard to "whether the bartenders themselves bring to the patron's table the drink they have poured or mixed."

In support of its expansive reading of section 351, *Budrow* stated that "section 351 is clear and unambiguous and makes no reference to 'direct table service.' " (*Budrow, supra,* 171 Cal.App.4th at p. 883.) That statement reflects a misunderstanding with respect to the role of section 351 in the statutory scheme. The reason section 351 makes no reference to "direct table service" is self evident—*section 351 is not a tip-pooling statute.* As explained above, section 351 declares the gratuity to be the sole property of the employee or employees for whom it was left in order to ensure that "tips received by an employee would not reduce an employer's *minimum wage obligation,* either directly or indirectly." (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d at p. 730, italics added.)

*Budrow* correctly recognized, "It is, in the final analysis, *the patron who decides to whom the tip is to be 'paid, given to, or left for.'* " (*Budrow, supra,*

171 Cal.App.4th at p. 883, italics added.) Although *Budrow* paid lip service to the restaurant patron's intent, it actually endorsed an employer's policy requiring servers to contribute a *fixed percentage* of their *gross sales* to bartenders and other employees (*id.* at p. 881), an amount which is totally unrelated to the patron's *intent* in leaving the gratuity.[4]

Now, the instant majority opinion extends employer-mandated tip pooling in restaurants far beyond *Leighton*'s direct table service standard, to include *all* participants in the "chain of service."

The confused state of the law flows from the grievous error of the *Leighton* court in misconstruing section 351, *which was enacted to protect the employees' right to a full minimum wage*, as a legislative imprimatur for employer-mandated tip pooling.

In sum, *Leighton* and its recent progeny have abrogated the guarantee of section 351 that the gratuity is the sole property of the employee or employees for whom it was left. Today, the gratuity is deemed a business asset and a part of the employer's cash flow, which the employer may take and apply toward its payroll to augment the wages of nontipped employees, in lieu of a pay raise for those employees.

The employer is now given unfettered discretion to redistribute gratuities in any amount the employer sees fit, and the tipped employee is left without a remedy. The separate concurring opinion of Justice Croskey asserts, "a mandatory tip pool should only be sustained under Labor Code, section 351 when it works a *fair and equitable* distribution among the employees who participate in the tip pool." (Conc. opn. of Croskey, J., at p. 927, italics added.) Despite that lament by Justice Croskey, the "fair and equitable" limitation is not part of the majority opinion and therefore is not the holding of this court. Therefore, an aggrieved employee has no recourse even if the employer's redistribution of tips is completely arbitrary.[5]

In addition to denigrating the property rights of tipped employees, the practice of employer-mandated tip pooling works a fraud on consumers.

---

[4] The majority opinion here and *Budrow* are at odds with respect to the import of *Leighton*. As discussed, the majority opinion takes the position that *Leighton*, in its footnote 6, recognized a "chain of service" standard. (Maj. opn., *ante*, at p. 921.) In contrast, *Budrow* views *Leighton* as silent on this issue. *Budrow* states *Leighton* "did not decide what [the] limitations are [on the types of employees who can be included in a tip pool], nor did it address the criteria or standards under which those limitations should be set." (*Budrow, supra,* 171 Cal.App.4th at p. 882.)

[5] The "fair and equitable" limitation is a condition expressly imposed by *Leighton, supra,* 219 Cal.App.3d at pages 1070–1071. Therefore, if employer-mandated tip pooling is the law in California, obviously it should be implemented in a fair and equitable manner.

(§ 356.) Unbeknownst to the average patron, it is now the employer, not the patron, who designates the recipients of gratuities. If a restaurant were to advise its patrons of the existence and particulars of its employer-mandated tip pooling policy, that disclosure may well affect the tipping practices of individual patrons. A fundamental flaw, ignored by the majority opinion, is that consumers are not being duly advised as to what happens to the gratuities they leave for their servers. (§ 356.)

Notwithstanding the Legislature's failure to address *Leighton* at the time it amended section 351 in 2000, in view of the chaos *Leighton* has now spawned, there is profound reason for the Supreme Court to grant review in this case in order to clarify the import of section 351.

Appellant's petition for review by the Supreme Court was denied June 17, 2009, S172761. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.